521 A.2d 936

**Beverly K. THOMPSON**

v.

**ROYAL INSURANCE, Appellant.**

Superior Court of Pennsylvania.

Argued June 24, 1986.

Filed Dec. 18, 1986.

Reargument Denied March 6, 1987.

80

Andrew Siegeltuch, Philadelphia, for appellant.

George F. Schoener, Philadelphia, for appellee.

Before CIRILLO, President Judge, and
WICKERSHAM and KELLY, JJ.

CIRILLO, President Judge:

Appellant, Royal Globe Insurance Company (Royal), appeals from an order denying its petition to vacate, modify or correct an award of arbitrators. The trial court held that the arbitrators committed no error of law in concluding that

the Pennsylvania Workmen's Compensation Act[1] did not bar appellee's recovery of uninsured motorist benefits under her employer's fleet policy. The trial court similarly supported the arbitrators' conclusions that the insurance contract at issue afforded appellee coverage in excess of the limit of $15,000 indicated in documents produced by Royal. We affirm in part and reverse in part.

The issues raised on appeal are as follows:

I. Whether Thompson's claim for uninsured motorist benefits is barred by Section 481(a) of Pennsylvania's Workmen's Compensation Act;

II. If Thompson is entitled to recover uninsured motorist benefits, whether she may not stack the coverages applicable to Sun's fleet of vehicles and her recovery must be limited to $15,000; and

III. Whether there was a legal basis for the arbitration panel to have found that Royal acted in bad faith during the conduct of the arbitration and to have awarded damages based on that finding.

Appellee, Beverly K. Thompson, was injured in an automobile accident involving an uninsured motorist on October 20, 1976. At the time of the accident, Thompson was driving a vehicle leased from Penske Leasing, Inc. by her employer, Sun Oil Company. Sun assigned the vehicle to Thompson for her exclusive use. Thompson was operating the vehicle within the course and scope of her employment at the time of the accident. Thompson sought and received Workmen's Compensation benefits from her employer.

Sun voluntarily provided insurance for the vehicle pursuant to a fleet policy issued by Royal. However, Thompson was required to pay $25 per month to Sun for automobile insurance premiums. Those insured under the policy produced by Royal included Sun and 107 affiliated companies. Thompson was not listed by name as insured under the policy. Sun had between 293 and 1000 vehicles in its fleet at the time of the accident.

---

1. Act of December 5, 1974, P.L. 782, No. 263, as amended 77 P.S. § 481(b).

Pursuant to the Arbitration Act of 1927, the uninsured motorist claim went before an arbitration panel. The panel found in favor of Thompson and against Royal in the amount of $1,750,000.00, and the court denied Royal's petition to modify, correct or vacate the award.

■ This Court recently considered whether an employee who collects workmen's compensation benefits following an employment related motor vehicle accident is precluded from obtaining uninsured motorist benefits. In *Boris v. Liberty Mutual Insurance Co.*, 356 Pa.Super. 532, 515 A.2d 21 (1986), we held that an injured employee's recovery of workmen's compensation benefits did not bar a subsequent recovery of uninsured motorist benefits. Accordingly, based on the reasoning set forth in *Boris*, we affirm the trial court's determination that Thompson is not precluded from recovery of uninsured motorist benefits.

We next consider the propriety of the arbitrators' conclusions regarding the extent of uninsured motorist coverage. The standard of review in this case is governed by Section 7302(d)(2) of the Uniform Arbitration Act which provides as follows:

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. § 7302(d)(2).

The arbitration panel concluded that Royal acted in "bad faith" by intentionally withholding and concealing the complete insurance policy at issue in the instant case. Therefore, the panel determined, the arbitrators' ability to ascertain the limits of coverage and the names of those designated as insured was hampered, and an "ambiguity" was created. The panel was constrained to decide the "ambiguities" in Thompson's favor, citing *Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 134 A.2d 223 (1957), *Ehrlich*

*v. U.S. Fidelity & Guaranty Co.,* 356 Pa. 417, 51 A.2d 794 (1947), *Hart v. State Farm Mutual Automobile Insurance Co.,* 288 Pa.Super. 53, 431 A.2d 283 (1981), and *Shearer v. Read,* 286 Pa.Super. 188, 428 A.2d 635 (1981). Accordingly, Thompson was awarded an amount far in excess of the standard coverage limit of $15,000.00. The panel found that a document tendered by Royal purporting to limit uninsured motorist benefits to $15,000 per person was "not indicative of the total parameters of recovery available to the plaintiff. . . ." The panel found additional support for their coverage determination in evidence indicating the existence of a $1,000,000 deductible for uninsured motorist protection pursuant to the Royal-Sun contract.

We hold that the panel's conclusions regarding the amount of coverage were contrary to law. The trial court erred in refusing to modify the award.

■ We first consider the "ambiguities" created by Royal's purported refusal to supply a complete contract of insurance. Initially, we note that the burden was on Thompson to prove each element of a cause of action entitling her to a recovery under the contract. As stated in *Benjamin v. Allstate Insurance Co.,* 354 Pa.Super. 269, 511 A.2d 866 (1986):

> "As in other civil actions, the burden is on the plaintiff, in an action on an insurance policy, to prove every fact in issue which is essential to his cause of action or right of recovery." 19 P.L.E. *Insurance* § 461. See: *Marlowe v. Travelers Insurance Co.,* 320 Pa. 385, 181 A. 592 (1935); *Allen v. Insurance Co. of North America,* 175 Pa.Super. 281, 104 A.2d 191 (1954). Thus, it is the plaintiff who is required to establish that his claim is within the coverage provided by the policy. See: Appleman, *Insurance Law and Practice* § 12094.

*Id.,* 354 Pa.Superior Ct. at 272, 511 A.2d at 868. The panel's conclusion that "Royal's failure to present evidence allowed the majority to go beyond that which was presented . . ." effectively shifted the burden of proof to Royal. To the extent that the panel placed the burden of disproving the existence of coverage upon Royal, it erred.

We recognize that Royal was obligated to produce the governing insurance policy pursuant to a court order entered prior to the arbitration. However, we believe that upon Royal's failure to produce as ordered, it was incumbent upon Thompson to seek sanctions as provided for by Pa.R.C.P. 4019(c). This she did not do with respect to the policy. Royal's failure or refusal to produce discoverable items to Thompson's satisfaction or in violation of the court's order may have placed Thompson in a position to seek a judgment by default or other court imposed sanctions. However, the panel was not thereby imbued with authority to manufacture policy terms out of thin air.

■ Thompson argues that the panel and the trial court had the authority to construe "ambiguities," created by Royal's failure or refusal to produce the policy, in Thompson's favor. She cites *D'Allessandro v. Durham Life Insurance Co.*, 503 Pa. 33, 467 A.2d 1303 (1983) in support of this proposition. This argument is without merit. Our Supreme Court in *D'Allessandro* reiterated the rule regarding the construction of ambiguous language in insurance policies.

> [W]here the *language of a policy* prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, courts will construe the language most strongly against the insurer and accept the construction most favorable to the insured. *Ehrlich v. U.S. Fidelity & Guaranty Co.*, 356 Pa. 417, 423, 51 A.2d 794, 797 (1947).

503 Pa. at 37, 467 A.2d at 1305 (emphasis added).

In *Ehrlich*, the Supreme Court explained the application of this rule of construction: "That rule, like corresponding artificial aids for the ascertainment of intent, becomes germane only when the meaning of the writing in action is doubtful, uncertain or ambiguous." 356 Pa. at 423, 51 A.2d at 797.

The rule applies only when the meaning of the *language* in a policy is so doubtful, uncertain, or ambiguous as to

obscure the intent of the drafter. In the instant case, the panel made no finding that any specific portion of the policy was ambiguous. The panel determined that it *did not have* the complete policy before it. Thus, the panel was not concerned with ambiguous or conflicting contract language or terms in need of construction, but rather a perceived *lack* of language as a result of Royal's conduct. The panel erred when it determined that the lack of an insurance policy or part of a policy entitled it to "construe" terms which, according to the panel's findings, were never before the panel in the first place.

[4] The panel appears to have based its decision at least in part upon its determination that Royal acted in "bad faith" under the holdings in *Cowden* and *Shearer, supra.* While Royal may or may not have been in violation of a court order and thereby deserving of court imposed sanctions, its conduct clearly does not constitute the type of "bad faith" conduct recognized by *Cowden* and its progeny. Quite simply, the panel erred to the extent that it relied upon *Cowden* and the cases which have followed it. *Cowden* and *Shearer* concerned bad faith suits brought against an insurance company as a result of the insurer's failure to settle a third party liability claim against its insured. The principles espoused in *Cowden* and restated in *Shearer* have nothing to do with the instant case. Here, the insured has not pursued a bad faith claim against Royal but rather an action based on the uninsured motorist provisions of the insurance policy.

■ We next consider the panel's reliance upon the existence of a $1,000,000 deductible for uninsured motorist protection. We fail to see how the existence of such a deductible is in any way determinative of limits of uninsured motorist coverage. Thompson presented no evidence establishing a relationship between the deductible and the disputed limits of uninsured motorist coverage. What Sun and Royal did in negotiating a deductible is wholly irrelevant to Thompson's claim and unrelated to the issue of the limit on uninsured motorist coverage.

■ Finally, having determined that the panel's award could not have been based upon (1) "ambiguities" created by the absence of a policy; (2) a "bad faith" action against Royal; or (3) the mere existence of a deductible, we next consider whether the panel's award may nonetheless be supported on some other ground. A decision may be affirmed if it is correct for any reason, even though the reasoning employed by the trial court may have been faulty. *Dauphin County Technical School Education Assoc. v. Dauphin County Area Vocational-Technical School Board,* 483 Pa. 604, 398 A.2d 168 (1978). In the instant case, neither the panel nor the trial court addressed the question of whether Thompson might be entitled to stack the uninsured motorist coverages provided pursuant to the commercial fleet policy. Thompson argues that stacking is appropriate inasmuch as she is a "class one" insured pursuant to *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984). In *Contrisciane,* our Supreme Court "reserve[d] for another day the question of whether a 'class one' insured may stack coverages under a fleet policy...." *Id.,* 504 Pa. at 338–39 n. 4, 473 A.2d at 1010–11 n. 4. This question was raised and answered in *Miller v. Royal Insurance Co.,* 354 Pa.Super 20, 510 A.2d 1257, wherein a panel of this Court concluded that even a class one insured is not entitled to stack uninsured motorist coverages under a fleet policy. We find the reasoning employed in *Miller* to be dispositive in the instant case. Thus, assuming *arguendo* that Thompson was a class one insured, we conclude that she was not entitled to stack coverages.

Having determined that no basis exists for the panel's award, we next consider whether the evidence adduced at the arbitration hearing would justify a modification or correction of that award. At the hearing, Thompson presented a copy of the insurance policy to the panel. The policy indicates a standard minimal uninsured motorist liability coverage of $15,000 per person. Further, deposition examination of William Arnold, the account executive responsible for the Sun account in 1976, established that the uninsured

motorist endorsement set forth the limitation of liability as $15,000 per person. In sum, the evidence produced by Thompson establishes that the uninsured motorist coverage afforded in this case is limited to $15,000. Accordingly, we vacate the order of the trial court and enter judgment in favor of Thompson in the amount of $15,000.

Order vacated. Judgment entered in favor of appellee in the amount of $15,000.

KELLY, J., files a dissenting opinion.

KELLY, Judge, dissenting:

I respectfully dissent. Appellant insurance company presented the arbitration panel with a plethora of documentation concerning their insurance contract with appellee's employer. However, appellant could not or would not direct the arbitration panel to the complete parameters of coverage existing at the time of appellee's accident. The arbitration panel, therefore, needed to construe segments of the evidence of coverage into a coherent whole; the policy fragments, as presented to the panel, constituted an ambiguity which the panel properly construed against appellant and in favor of appellee. *D'Allessandro v. Durham Life Insurance Co.*, 503 Pa. 33, 467 A.2d 1303 (1983). Accordingly, I would affirm the order of the trial court.