552 A.2d 254

Della C. LASTOOKA and Francis R. Scholl and Anthony P. Picadio, Co–Executors of the Estate of John M. Lastooka, Deceased, Appellants,

v.

AETNA INSURANCE COMPANY.

Della C. LASTOOKA and Francis R. Scholl and Anthony P. Picadio, Co–Executors of the Estate of John M. Lastooka, Deceased,

v.

AETNA INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued June 30, 1988.

Filed Nov. 15, 1988.

Reargument Denied Jan. 9, 1989.

Anthony P. Picadio, Pittsburgh, for Lastooka, et al.
John Edward Wall, Pittsburgh, for Aetna Ins. Co.

Before BROSKY, JOHNSON and MELINSON, JJ.

BROSKY, Judge:

This is a consolidated appeal from a summary judgment granted in part in a declaratory judgment action instituted by appellants, Lastooka, Scholl and Picadio, co-executors of the estate of John Lastooka, after the deceased was killed in an automobile accident. These appellants sought a declaration of insurance coverage rights based upon a business auto policy in existence at the time of the fatal accident.

Two issues have been raised for resolution on appeal: (1) was the decedent covered under the uninsured motorist provisions of the policy even though he was not occupying a covered auto at the time of the accident? and (2) was decedent entitled to stack insurance coverage? The trial court found that uninsured motorist coverage applied to the accident but that stacking of coverage was not permissible.

Appellee, Aetna Insurance Company, in a cross-appeal, appeals the finding that coverage applied in the first instance. We will refer to Aetna as appellee throughout this opinion. We affirm in part and vacate in part.

The following facts are of relevance to our decision: On February 5, 1985, John Lastooka was fatally injured in a motor vehicle accident while riding as a passenger in a car driven by Sharon Kentros, who was uninsured. At the time of the accident the deceased was the owner of Ram Construction Company, a sole proprietorship. All of Ram Construction's business vehicles, as well as the family's personal automobiles, were titled under the name of Ram Construction and insured under a business auto policy issued by Aetna. The total number of vehicles insured at the time of the accident was 28, five of which were the personal vehicles of the family members. All insurance premiums were paid by the deceased personally through a company account. Effective February 25, 1984, the endorsement to the policy had been amended to include John Lastooka and Della Lastooka as named insureds. The named insureds had already included John M. Lastooka d/b/a Ram Construction Company, Ram Construction Company and Ram Management Corporation.

█ We agree with the trial court's conclusion that uninsured motorist coverage existed despite the fact that appellants' decedent was not occupying a "covered auto" at the time of the accident. This Court previously found coverage to apply under similar facts in the case of *Estate of Rosato v. Harleysville Mut. Ins.*, 328 Pa.Super. 278, 476 A.2d 1328 (1984). There we stated "[t]he fact that the decedent was not occupying a vehicle covered under appellant's policy at the time of the accident is not determinative." Id., 328 Pa.Superior Ct. at 289, 476 A.2d at 1334. Appellee argues, however, that *Rosato* did not consider the effect that a schedule of coverages section in the policy had upon the determination that coverage existed.

Under the policy found in this case, there is a "schedule of coverages and covered autos" which designated that

uninsured motorist coverage had been purchased, but more important to appellee's argument was the fact that the "covered autos" box was coded as covering "owned autos only". Appellee argues that this designation requires a finding that uninsured motorist coverage applied to the deceased only while in an owned auto. We disagree.

The page of the policy on uninsured motorist coverage contains a section entitled "who is insured" and states "1. You or any family member. 2. Anyone else occupying a covered auto ..." The policy does not read "you or any family member while occupying a covered auto" which is how appellee, in essence, asks us to interpret the provision. Contrast this with the provisions in the policy on liability coverage which, under the "who is insured" section, states that "you are an insured for any covered auto." If the uninsured motorist section is read as urged by appellee, the first classification, known as a class one insured, would be superfluous. Coverage would simply apply to any person occupying the vehicle whether or not they be a named insured or otherwise. However, under developed case law the class one status is crucial to determining the right to stack coverages, and cannot be simply disregarded. See *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). Furthermore, it is difficult to project how this coverage could be purchased under appellee's urged reading. There is a code for "any auto" which could, supposedly, have been designated in the uninsured motorist block. However, this event would literally have qualified the second enumerated class of covered individuals, listed above, to read "anyone else occupying any auto". Of course, this renders appellee's urged reading somewhat absurd.

 We find the stacking issue to be a bit more complicated; nevertheless, we must applaud the detailed history and analysis of the cases on the stacking issue contained in appellants' brief. Clearly, not all the questions in this area have been resolved to a satisfactory degree, and some can be easily interpreted to conflict with one another to a certain degree. However, the statements of this Court

suggest an adoption of the position that stacking of coverage is not allowable as to coverages on corporate fleet vehicles, even for class one insureds. See *Miller v. Royal Insurance Company*, 354 Pa.Super. 20, 510 A.2d 1257 (1986) (for an express holding to this effect), *Boris v. Liberty Mutual Insurance Co.*, 356 Pa.Super. 532, 515 A.2d 21 (1986) and *Thompson v. Royal Insurance Co.*, 361 Pa.Super. 78, 521 A.2d 936 (1986).

As noted by appellant, the above cases can be distinguished factually. For instance, it appears that the cases declining stacking of coverage involve claimants who were claiming coverage only on the basis of occupying the insured vehicle, and thus were not truly class one insureds.[1] In contrast, the insured in this case not only was a named

1. Contrary to the assertions of our dissenting colleague, we do not attempt to distinguish *Miller* on the basis that "the cases declining stacking of coverage involve claimants who were claiming coverage only on the basis of occupying the insured vehicle, and thus were not truly class one insureds." Dissenting opinion at p. 415. Indeed, we accepted the rather broad statement made in *Miller* regarding stacking of coverage under corporate fleet policies, majority opinion p. 412, while candidly acknowledging, and perhaps despite, appellants' convincing demonstration of the above point.

Appellants appear to be correct in their assertion. *Boris* states unequivocally that the claimant was not a class one insured, *Thompson* indicates that the claimant was not a named insured and *Miller* is actually inconclusive on the matter. Although the *Miller* opinion, in conclusory fashion, states that the claimant was a class one insured, it is not apparent, from the facts given in the opinion, how the panel made this determination. It does not appear that the claimant in *Miller* was a named insured, or a family member of a named insured. (The standard qualifications for class one status.)

However, the claimant was the wife of a corporate officer thus leaving open to speculation the possibility that the panel found the claimant a class one insured based upon part of the unanswered question posed in *Contrisciane*, that being, whether the officers of a corporation are class one insureds under a policy issued in the name of the corporation. See, *Contrisciane*, 504 Pa. at 338–339, 473 A.2d at 1010. Regardless of the panel's reasoning for finding the claimant a class one insured in *Miller*, there is absolutely no indication that the claimant there was a named insured who paid the premiums. This is the point made by the appellants and is indeed relevant under the case law. For instance, in *Contrisciane* our Supreme Court stated that one of the reasons for allowing the stacking of coverage is "that the intended beneficiary of an uninsured motorist policy is entitled to multiple coverages when multiple premiums have been paid." 504 Pa.

insured but also paid the premiums. However, the broader proposition, that uninsured motorist coverage cannot be stacked under a corporate fleet policy, is adopted throughout these cases and clearly runs contrary to appellants' position. We feel constrained to follow the principle established in this line of cases even though a strong argument can be made to support appellants' position.

■ We do not believe, however, that our determination that stacking is not available as to coverage of vehicles in the corporate fleet ends the inquiry on stacking. Coverage was also provided, in the present case, for five vehicles which, although titled in the name of Ram Construction, were stipulated by the parties to be vehicles used by the family members for personal purposes. Despite the fact that all of the vehicles, 28 in all, were under the same policy, apparently the vehicles covered were of two separate classes, personal use and business use. This is not an uncommon scenario in small businesses and corporations which are owned by a small number of people. We think that *Miller* controls with regard to stacking coverage of the Ram Construction fleet; however, the reasoning of *Miller* does not compel the same result as to coverage on the personal vehicles of the family members.

at 338, 473 A.2d at 1010. The Court went on to state (with regard to class two insureds):

A claimant whose coverage is solely a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage.

Id., 504 Pa. at 338–339, 473 A.2d at 1010–1011. Appellants' assertion is that the cases declining stacking involved claimants who were not specifically intended beneficiaries, nor did those claimants pay the premiums.

The present claimant was an intended beneficiary and, at least-arguably, can be said to have paid the premiums. We acknowledge the distinction between the present case and those cited above. However, we feel compelled to follow *Miller* because the principle is stated so broadly and unequivocally. Yet, we find the present case to be different in another material respect, that being that the policy covers both corporate fleet vehicles and personal use vehicles. Hence, the result reached below, we believe, is in keeping with the principles established in *Miller* as well as in *Contrisciane.*

The commonly cited reason for disallowing stacking of coverage on a corporate fleet is that it would unreasonably extend the potential liability of the insurer by covering a potentially large number of vehicles and drivers and would thus be beyond the reasonable expectations of the insurer and the policyholder. See *Miller*, 354 Pa.Super. at 23, 510 A.2d at 1259. The same cannot be said in the context of coverage of personal use vehicles where the class one insureds are finite and readily discernible in number as are the number of vehicles covered. Furthermore, the right to stack such coverage is well settled in the common personal use vehicle situation. See *Rosato* and *Contrisciane*, supra. Consequently, it can be expected or at least foreseen that such coverage will apply to those vehicles.

The policy in question here covered 28 vehicles in total, 23 of which were used in the business and five others which were the personal vehicles of the deceased, his wife and three daughters. Appellants' decedent paid the premiums for the coverage of all of the vehicles, both business and personal, albeit from a Ram Construction account. Consequently, the policy could be thought of as being a combined business/personal auto policy. Appellee insurance company was aware, or should have been aware when the named insureds of the policy were amended to include John and Della Lastooka, that the policy had or was taking on a personal nature in addition to whatever purely business nature it may have previously had. There would appear to be no dispute that had the appellee insured the five personal use vehicles on a separate personal policy appellants would be entitled to stack coverages on those autos. See, *Rosato*, supra. We believe the same result must be reached here where both personal and business use vehicles are insured under the same policy. We cannot read *Miller* to indicate that the title of the policy will control the stacking issue but rather see the nature of the policy and that which it insures to be the controlling factor. Here, although the policy was called a "business auto policy" and covered a fleet of business vehicles, it also provided coverage for a distinctly different class of vehicles as well, that being the family's

personal vehicles. Consequently, we would conclude that *Miller* and its progeny require disallowance of stacking of coverage of the corporate fleet vehicles but not coverage on personal use vehicles where both are covered under one policy.

For this reason, we vacate that part of the judgment regarding stacking to the extent it disallows stacking of coverage on the personal use autos and remand for entry of an appropriate order. The judgment is affirmed as to its determination that coverage applies.

Judgment affirmed in part, vacated in part and remanded.

JOHNSON, J., files dissenting opinion.

JOHNSON, Judge, dissenting:

I join so much of the majority opinion as would affirm the trial court's finding that plaintiff's decedent is entitled to recover under the uninsured motorist insurance endorsement of the policy although he was not occupying an owned auto at the time of the accident. *Estate of Rosata v. Harleysville Mutual Insurance Company*, 328 Pa.Super. 278, 476 A.2d 1328 (1984).

I dissent from that portion of the majority decision that would vacate that part of the trial court order which denies the stacking of coverages. The majority seeks to distinguish *Miller v. Royal Insurance Company*, 354 Pa.Super. 20, 510 A.2d 1257 (1986) on the basis that "the cases declining stacking of coverage involve claimants who were claiming coverages only on the basis of occupying the insured vehicle, and thus were not truly class one insureds." Majority opinion, at page 412.

The *Miller* court expressly stated that the trial court in the case before it had determined that Miller was a class one insured. The court further indicated that the issue before it was "whether a 'class one' insured may stack coverages under a fleet policy," 354 Pa.Super at 23, 510 A.2d at 1258, a question that had not been reached in *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984).

The fact that the parties in the appeal before us may have stipulated that five vehicles were used by family members for personal purposes [1] would not be sufficient to permit stacking in my view, in the face of the clear holding in *Miller* that coverages under a fleet policy may not be stacked. *Id.*, 354 Pa.Superior Ct. at 23, 510 A.2d at 1258.

The majority seeks to distinguish *Miller* by referring to the unreasonable extension of potential liability arising from a potentially large number of vehicles and drivers under a commercial fleet policy. Yet it is exactly this distinction which was expressly rejected by our court in *Miller*.

I find the opinion of the distinguished trial judge, the Honorable Marion Finkelhor, to be completely dispositive of the only two issues on this appeal. Her reliance on *Estate of Rosata* and on *Miller*, as well as on *Boris v. Liberty Mutual Insurance Co.*, 356 Pa.Super. 532, 515 A.2d 21 (1986) is well founded. I would affirm the order granting summary judgment on the stacking issue.

Hence, this dissent.

---

**1.** The stipulation, at paragraph 5 states merely that: "Five of these autos were personal for Mr. Lastooka, his wife and their three daughters."