**Robert Henry OBER, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Defendant.**

**Civ. A. No. 89–2473.**

United States District Court, W.D. Pennsylvania.

Oct. 31, 1990.

On Motion For Reconsideration Feb. 4, 1991.

Jay H. Feldstein, Feldstein, Grinberg, Stein & McKee, Pittsburgh, Pa., for plaintiff.

Timothy J. Burdette, Anstandig, Levicoff & McDyer, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Plaintiff, Robert Henry Ober, brought this action for a declaratory judgment pursuant to 28 U.S.C. § 2201. The plaintiff seeks a declaration of his rights and benefits under a policy of insurance providing uninsured/underinsured motorist coverage issued by the defendant, the Aetna Casualty and Surety Company. Presently before the court are cross-motions for summary judgment requiring adjudication of the following issues:

1. Whether the Aetna Casualty and Surety Company may limit its liability on uninsured/underinsured motorist coverage by use of anti-stacking language in the policy or pursuant to the decision in *Chartan v. Chubb Corp.*, 725 F.Supp. 849 (E.D.Pa.1989), wherein the court disallowed stacking in excess of the liability coverage in the same policy; and

2. Whether the maximum amount payable under the policy of automotive insurance is to be reduced by amounts received by plaintiff from settlement with persons legally responsible.

The relevant facts of this matter are undisputed. The plaintiff is the president of a company known as Hy–Tech Machine Company, Inc. (Hy–Tech), a Pennsylvania corporation located in Butler County, Pennsylvania.

On October 1, 1987, plaintiff was driving from his home to eat breakfast with some friends at a local restaurant when the automobile he was operating was struck by an automobile operated by Gary Harvey Moore (Moore). As a result of the accident, plaintiff suffered serious and permanent injuries.

The defendant had issued to Hy–Tech a policy of automobile insurance for the period from December 10, 1986 through December 10, 1987 which scheduled two vehicles, one of which was operated by the plaintiff at the time of the accident. The two vehicles were provided to plaintiff for his personal use and separate premiums were paid for each vehicle. The policy provided for uninsured/underinsured coverage in the amount of $300,000.00 for each vehicle.

The plaintiff received the full liability limits, totalling $450,000.00, of three separate liability policies covering the vehicle operated by Moore. Subsequent to the receipt of the $450,000.00, plaintiff made claim for underinsurance benefits from defendant pursuant to the policy of insurance issued to Hy–Tech. Plaintiff contends that since there are two covered vehicles, the underinsurance coverage may be "stacked" such that the underinsured motorist coverage would be limited to $600,000.00.

■ Defendant denied liability on the claim, contending that Paragraph E.1[1] of the policy precludes stacking. Defendant further contends that pursuant to paragraph E.2[2] plaintiff must reduce the limits of his insurance coverage, alleged by defendant to be $300,000.00, by the $450,000.00 received from Moore's insurance coverage. Since the amount received exceeds the maximum amount to be paid under the defendant policy, defendant declined payment.

---

**1.** Paragraph E.1 of the policy, in relevant part, reads as follows: Except as provided in the following paragraph, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident.

However, if bodily injury is sustained in an accident by you or any family member, and if there is more than one covered auto, our maximum limit of liability for all damages in any such accident is the sum of the limits applicable to each covered auto. Subject to our maximum limit of liability for all damages, the most we will pay for bodily injury sustained by an insured other than you or any family member is the limit of UNINSURED MOTORISTS INSURANCE. . . .

**2.** Paragraph E.2 of the policy reads as follows: Any amount payable for damages under this insurance shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid for the same damages under the policy's LIABILITY INSURANCE.

There are Federal and Pennsylvania court decisions which have invalidated provisions in personal automobile insurance policies which prohibit the combining, or stacking, of the limits of coverage of all the vehicles covered by the policy. *Nonemacher v. Aetna Casualty & Surety Co.*, 710 F.Supp. 602, 607 (E.D.Pa.1989); *Tallman v. Aetna Casualty & Surety Co.*, 372 Pa.Super. 593, 602, 539 A.2d 1354, 1359, appeal denied, 520 Pa. 607, 553 A.2d 969 (1988). Defendant argues that because the plaintiff is not the named insured under the policy, and the policy is not a personal automobile insurance policy, the anti-stacking language of Paragraph E.1 must be given effect pursuant to the Pennsylvania Superior Court's mandate in *Miller v. Royal Insurance Company*, 354 Pa.Super 20, 510 A.2d 1257 (1986) *affirmed*, 517 Pa. 306, 535 A.2d 1049 (1988).

Because the Pennsylvania Supreme Court has "reserved for another day" the question of whether the owner and/or officers of a corporation are class one insureds under a policy issued in the name of the corporation, See *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984), and because it has not adopted the sweeping statement of *Miller* that "coverages under a fleet policy may not be stacked," this Court must predict how the Supreme Court would resolve the above issues if presented with the specific facts of this case.

In *Miller*, the Superior Court adopted the position that stacking of coverage was not allowable as to coverage on corporate fleet vehicles, even for class one insureds. This case arose from a motor vehicle collision involving appellee, Mary Ann Miller, and an uninsured motorist. Mrs. Miller was driving a vehicle owned by Wes II Air Freight (Wes II) and assigned to her husband, Joseph Miller, as Wes II's corporate secretary. The car was covered by an insurance policy issued by Royal Insurance Company to Wes II. The uninsured motorist claim was arbitrated before an arbitration panel who found in favor of the claimant and against Royal in the amount of $70,000. To reach the award of $70,000,

the arbitrators stacked coverage on three vehicles insured under the fleet policy.

The Court of Common Pleas of Philadelphia County denied Royal's petition to modify the award of the arbitrators. In reversing the lower court, the Superior Court stated:

> The court below determined that appellee is a class one insured. We agree, however, this classification becomes irrelevant in light of our determination that coverages under a fleet policy may not be stacked.

*Miller v. Royal Insurance Company*, 510 A.2d at 1258.

The reasoning behind the denial of the stacking of fleet policies is that such policies potentially cover a multitude of vehicles. *Miller* at 1259. "[T]o allow stacking would be to make premium costs prohibitively expensive and would not be within the reasonable expectations of the insurer and the employer-policyholder...." *Yeager v. Auto-Owners Insurance Co.*, 335 N.W.2d 733, 739 (Minn.1983), as quoted in *Miller v. Royal Insurance Company* 510 A.2d at 1259.

In *Lastooka v. Aetna Ins. Co.*, 380 Pa. Super. 408, 552 A.2d 254, *allocatur granted*, 522 Pa. 613, 563 A.2d 498 (1989), the court concluded that the reasoning in *Miller* does not compel the same result as to coverage on personal use vehicles insured under a business auto policy. The plaintiff's decedent in *Lastooka* was fatally injured in a motor vehicle accident while riding as a passenger in an uninsured car. At the time of the accident the deceased was the owner of Ram Construction Company, a sole proprietorship. All of Ram construction's business vehicles, as well as the family's personal automobiles, were titled under the name of Ram Construction and insured under a business auto policy issued by Aetna. The total number of vehicles insured at the time of the accident was twenty-eight (28), five of which were the personal vehicles of the family. All insurance premiums were paid by the deceased personally through a company account and the named insureds included decedent, John Lastooka, and his wife.

In the context of coverage of personal use vehicles, the class one insureds are finite and readily discernible in number, as are the number of vehicles covered. *Lastooka* 552 A.2d at 257. Since the right to stack such coverage is well settled in the personal use vehicle situation, *Estate of Rosato v. Harleysville Mut. Ins.*, 328 Pa. Super. 278, 476 A.2d 1328, (1984), *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984), it should be foreseen that such coverage will apply to those vehicles and would not be beyond the reasonable expectations of the insurer.

In the case at bar, the policy issued by defendant to Hy–Tech provided coverage for two (2) motor vehicles owned by Hy–Tech for the personal use of plaintiff. This clearly falls within the ambit of *Lastooka*. The defendant should have been aware that this would not be a standard fleet policy and that stacking was within the reasonable expectations of both parties. The nature of the policy and that which it insures, rather than the title of the policy, will control the stacking issue. *Lastooka v. Aetna Ins. Co.*, 552 A.2d at 257.

Defendant maintains that the plaintiff is an "insured" under the policy, but not the "named insured" and therefore is specifically prohibited from stacking coverage under Paragraph E.1. Paragraph E.1 permits stacking only if "bodily injury is sustained in an accident by you or any member of your family, and if there is more than one covered auto ..." The policy provides a definition of the terms "you" and "your" as follows:

"You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

Item One of the declarations identifies the named insured under the policy as "HY–TECH MACHINE COMPANY, INC."

Therefore, the defendant contends that plaintiff is an "insured", but is not a person within the scope of the term "you" as used in Paragraph E.1 of the policy. According-ly, plaintiff is not entitled to the benefit of stacking of the limits as provided under paragraph E.1 for persons within the scope of the term "you" and their family members.

Unlike *Miller*, wherein the express language of the policy prohibited stacking, we are not being asked to rewrite the insurance contract. This court will not allow the defendant to sidestep its obligations by use of semantic acrobatics. Though the Pennsylvania Supreme Court in *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984) left unanswered the question whether the officers of a corporation are class one insureds under a policy issued in the name of the corporation, the Court did state that one of the reasons for allowing stacking is that "the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid out." *Contrisciane* 473 A.2d at 1010. The Court went on to state, with regard to class two insureds, as follows:

A claimant whose coverage is *solely* a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage.

*Id.*, 473 A.2d at 1010–1011. (emphasis added).

Plaintiff is the President and owner of Hy–Tech, the named insured on the policy at issue. There is no individual person who is a named insured. It is absurd to believe that one would insure the corporation against bodily injury in an uninsured motorist policy.[3] The intended beneficiaries of such policy are at minimum the officers and directors of the corporation, whose coverage is not "solely the result" of membership in a class. The injured party in *Miller v. Royal Insurance Company*, who was found to be a class one insured, was the wife of the corporate secretary, and the

---

3. Should not the insurer have a duty to advise the insured of the "downside" of naming a corporation as the insured in the policy, i.e. the very people who were intended to be beneficiaries of the policy are being carved out.

insurance policy was issued in the name of the corporation.

In construing uninsured and underinsured legislation, the appellate courts of Pennsylvania have held that the "purpose of the uninsured motorist law has been frequently interpreted by our courts as providing protection to the innocent victims of uninsured drivers," *Boyle v. State Farm Mut. Auto. Ins. Co.*, 310 Pa.Super. 10, 21, 456 A.2d 156, 162 (1983), and that the statutes have been "designed to give monetary protection to that ... large group of persons who ... suffer grave injuries through negligent use of those highways by others." See *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 395, 241 A.2d 112, 115 (1968). In furtherance of the theme of the judicial interpretation of the uninsured motorist statutes, it is clear to this court that plaintiff is an intended beneficiary of the policy at issue, and as such, is entitled to stack the uninsured motorist coverage of both vehicles.

■ We next address defendants contention that if stacking is permitted, under *Chartan v. Chubb Corp.*, 725 F.Supp. 849 (E.D.Pa.1989) the stacked limits could not in any event exceed the $300,000.00 limits of liability provided under the policy. This issue, also, has not been addressed by the Pennsylvania Supreme Court. Therefore, it is the duty of this court to predict how Pennsylvania's highest court would resolve such issue.

In *Chartan*, the decedent's representative sought to stack the $1,000,000.00 of underinsured coverage under an excess policy covering two vehicles. The district court held that the uninsured motorist coverage under the excess policy could not be stacked over the public liability limits in that policy.

The *Chartan* court relied upon section 1736 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.Con.Stat.Ann. § 1736 [4], in limiting recovery under an uninsured motorist policy. In interpreting this section, the court found that permitting individuals to stack uninsured or underinsured motorist coverage beyond that of liability coverage would be inconsistent with § 1736 and undermine the purpose behind it. *Chartan v. Chubb Corp.*, 725 F.Supp. at 853. The legislature's intent in enacting § 1736 was to "prevent the new insurance system from degenerating into a purely first-party insurance system, where each driver [was] insured against his or her loss, but no driver insure[d] against the damage he or she may do to others." J. Ronca, L. Sloane & J. Mundy, *An Analysis of the Financial Responsibility Law*, 104, § 6:11 (1986). The court found that the legislature did not intend to "permit by means of stacking what it forbade by purchasing coverage directly." *Chartan* at 853.

Since the *Chartan* decision, several recent Pennsylvania District Court cases have contradicted such holding. In *North River Insurance Co. v. Tabor*, 744 F.Supp. 625 (M.D.Pa.1990), appeal docketed, Civ. No. 90–5709 (3d Cir. August 9, 1990), the court found a strong legislative policy favoring the concept of stacking and determined that § 1736 was *not* meant to limit the maximum amount of recovery by an insured when stacking uninsured and underinsured benefits.

To determine the legislature's intent, the *Tabor* court looked more at what was omitted from Subchapter C of the MVFRL rather than the actual language of the provisions found there. Looking at § 1717 [5] under Subchapter B, the court found that while the legislature specifically excluded the stacking of first-party benefits here, it made no such provision in the uninsured/underinsured provisions in Subchap-

---

**4.** 75 Pa.C.S.A. § 1736 reads as follows:

The coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

**5.** 75 Pa.C.S.A. § 1717 provides as follows:

First party benefits shall not be increased by stacking the limits of coverage of:
(1) multiple motor vehicles covered under the same policy of insurance; or
(2) multiple motor vehicles policies covering the individual for the same loss.

ter C. The court therefore concluded that the legislature did not intend to preclude stacking of underinsured coverage.

The District Courts for the Eastern and Middle Districts of Pennsylvania also disputed the *Chartan* findings in *Byers v. Amerisure Ins. Co.*, 745 F.Supp. 1073 (E.D. Pa.1990) and *Maryland Casualty Company v. Lee Albert Fitze*, 744 F.Supp. 628 (M.D.Pa.1990). Based upon the dominant line of Pennsylvania cases allowing stacking for Class one insureds and the legislative intent to protect innocent victims from irresponsible drivers, the courts liberally construed the uninsured and underinsured motorist coverage provisions and allowed the stacking of coverage regardless of the liability limits of the primary policy.

The Pennsylvania Courts have uniformly approved the stacking of uninsured and underinsured motorist benefits. In *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968), the Pennsylvania Supreme Court allowed a named insured to stack his own uninsured motorist coverage with that of his employer, whose vehicle he had driven at the time of the accident. An insured was permitted to stack his uninsured motorist coverage with that of his wife in *State Farm Mut. Auto. Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978). A line of Pennsylvania Superior Court cases have, similarly, favored stacking. See, e.g., *Tallman v. Aetna Cas. and Sur. Co.*, 372 Pa.Super. 593, 602, 539 A.2d 1354, 1359 (1988) (permits intrapolicy stacking of underinsured motorist coverage); *Estate of Rosato v. Harleysville Mut. Ins. Co.*, 328 Pa.Super. 278, 288, 476 A.2d 1328, 1333 (1984) (permits interpolicy and intra-policy stacking of uninsured motorist coverage); and *Blocker v. Aetna Cas. and Sur. Co.*, 232 Pa.Super. 111, 117–18, 332 A.2d 476, 479–80 (1975) (en banc) (allows inter-policy stacking of uninsured motorist coverage).

From the above discussion, it is obvious that Pennsylvania has developed an express policy favoring the protection of innocent victims of automobile accidents via the stacking vehicle. The legislature has failed to codify any contradictory view, and in fact, in the amendments to the MVFRL which became effective July 1, 1990, Section 1738 [6] specifically approves stacking.

Staying in tune with the theme orchestrated by the Pennsylvania Judiciary and codified by the Pennsylvania Legislature, this court rejects the holding in *Chartan* and finds that stacking of uninsured and underinsured motorist coverage by class one insureds is permissible without limitation by the liability limits of the primary policy. Plaintiff shall be permitted, therefore to stack his $300,000.00 underinsured motorist coverage for each vehicle for a total amount of $600,000.00

■ The other issue before the court is whether defendant is entitled to set-off the underinsurance coverage against amounts paid to plaintiff as liability insurance proceeds. The policy at issue contains an express provision, Paragraph E.2, which entitles the defendant to reduce the amount of underinsured benefits by "all sums paid by or for anyone who is legally responsible."

In support of its position, defendant relies upon *Bateman v. Motorists Mutual Ins. Co.*, 377 Pa.Super. 400, 547 A.2d 428 (1988), *allocatur granted*, 522 Pa. 571, 559 A.2d 33 (1989), and *Geisler v. Motorists Mutual Ins. Co.*, 382 Pa.Super. 622, 556 A.2d 391 (1989), wherein the Superior Court enforced set-off provisions similar to those in the case at bar. *Bateman* and *Geisler* are clearly distinguishable from the present case. In those cases, the insurance policies were issued prior to the effective date of the MVFRL. At such time, underinsured motorist coverage was optional, therefore those cases are not applicable to the present case.

---

6. Act of Feb. 7, 1990, Pub.L. No. 6 (codified at scattered sections of 18, 42 and 75 Pa.Con.Stat. Ann.). Section 12 of that act states that "[t]he limits of coverage available under this subchapter for the insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." This section is codified at 75 Pa.Con.Stat.Ann. § 1738 (Purdon Supp. 1990).

The Pennsylvania MVFRL requires that all liability insurance policies issued in Pennsylvania provide underinsurance coverage of no less than the amount of $15,000.00. By means of the set-off provision, defendant is attempting to reduce the plaintiff's underinsured motorist coverage to zero. This would not only violate the express dictates of the MVFRL, but would render plaintiff's uninsured/underinsured coverage illusory.

The District Court in *Schemberg v. Progressive Casualty Ins. Co.*, 709 F.Supp. 620 (E.D.Pa.1989) held that an off-set provision in an automobile insurance policy issued after the effective date of the MVFRL is invalid as contrary to public policy. Similarly in *North River Insurance Co. v. Tabor*, 745 F.Supp. 1073, (M.D.Pa.1990), appeal docketed, Civ. No. 90–5709 (3d Cir. August 9, 1990) the court found that to permit off-set provisions to reduce underinsurance coverage would frustrate the legislative intent that underinsurance coverage be a requirement in Pennsylvania. The Pennsylvania Court of Common Pleas in *Bonfield v. State Auto Insurance Association*, Lawrence County, No. 1038 of 1989, March 29, 1990 found that the set-off clause in uninsured motorist coverage is against public policy and unenforceable.

Plaintiff has received $450,000.00 from the tortfeasor's insurer for the severe injuries he suffered. Underinsurance coverage only makes sense if such amount is set-off against the *total* actual damages suffered by plaintiff. To allow set-off against his underinsurance coverage renders such coverage a nullity. Accordingly, we find that the set-off provision in the policy issued by the defendant is void as contrary to public policy and inconsistent with the express mandate of the MVFRL.

An appropriate Order follows.

## ORDER OF COURT

AND NOW, to wit this 19th day of December, 1990, upon consideration of Cross Motions for Summary Judgment and oral argument upon such, it is hereby

ORDERED, that the plaintiffs Motion for Summary Judgement is hereby Granted as follows:

1. Plaintiff is permitted to stack the underinsured motorist coverage in the policy issued by defendant to Hy–Tech Machine Company, Inc. thereby allowing coverage in the amount of $600,000.00; and

2. Paragraph E.2 in the insurance policy issued by defendant which entitles the defendant to reduce the amount of underinsured benefits by all sums paid by or for anyone who is legally responsible is void as contrary to public policy.

It is FURTHER ORDERED that defendant's Motion for Summary is hereby DENIED.

## ON MOTION FOR RECONSIDERATION

Defendant, Aetna Casualty and Surety Company, has filed a Motion for Reconsideration and Amendment of Judgment with regard to this Court's Memorandum Opinion and Order of Court filed on the 19th day of December, 1990 which entered summary judgment in favor of plaintiff, Robert Henry Ober.

Defendant requests reconsideration because it believes that the Court's reasoning is contradicted by the decision of the Supreme Court of Pennsylvania in *Selected Risks Insurance Co. v. Thompson*, 520 Pa. 130, 552 A.2d 1382 (1989). Though this Court did not mention *Selected Risks*, in its Opinion, such was considered and found to be inapplicable to the case at bar.

The Pennsylvania Supreme Court in *Selected Risks* determined that volunteer fire associations are in reality quasi-government units. The insurance policy, issued to the volunteer fire association to cover its six fire trucks, was found to be essentially a fleet policy issued to a government unit. Relying upon the holdings in *Miller v. Royal Insurance Company*, 354 Pa.Super. 20, 510 A.2d 1257 (1986), *aff'd per curiam*, 517 Pa. 306, 535 A.2d 1049 (1988) and *Flamini v. General Accident Fire Life Assurance Corp.*, 328 Pa.Super. 406, 477 A.2d 508 (1984), the Pennsylvania Supreme Court prohibited fleet stacking by a government

unit. See *Selected Risks Insurance Co. v. Thompson,* 520 Pa. 130, 135, 552 A.2d 1382, 1387 (1989).

In the case at bar, the named insured was a closely held corporation, not a government unit, and the policy covered two personal use vehicles, not a standard commercial fleet. The holding in *Selected Risks* is simply not applicable. As stated in our Opinion, we believe the stacking issue is controlled by *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984) and *Lastooka v. Aetna Ins. Co.,* 380 Pa.Super. 408, 552 A.2d 254, *allocatur granted,* 522 Pa. 613, 563 A.2d 498 (1989).

The Pennsylvania Supreme Court in *Contrisciane* left unanswered the question whether the officers of a corporation are class one insureds under a policy issued in the name of the corporation. However, the Court did state that one of the reasons for allowing stacking is that "the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid out." *Contrisciane* 473 A.2d at 1010. The Court went on to state, with regard to class two insureds, as follows;

> A claimant whose coverage is *solely* a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage.

*Id.,* 473 A.2d at 1010–1011. (emphasis added).

There is no question that the intended beneficiary of the insurance policy in question was the plaintiff in his capacity as President and owner of Hy–Tech Machine Company, Inc. This Court finds that there was a recognizable contractual relationship with the insurer upon which plaintiff could reasonably expect multiple coverage.

In *Lastooka v. Aetna Ins. Co.,* the court concluded that the reasoning in *Miller* does not compel the same result as to coverage on personal use vehicles insured under a business auto policy. In the context of coverage of personal use vehicles, the class one insureds are finite and readily discernible in number, as are the number of vehicles covered. *Lastooka* 552 A.2d at 257. Since the right to stack such coverage is well settled in the personal use vehicle situation, *Estate of Rosato v. Harleysville Mut. Ins.,* 328 Pa.Super. 278, 476 A.2d 1328, (1984), *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), it should be foreseen that such coverage will apply to those vehicles and would not be beyond the reasonable expectations of the insurer.

In the case at bar, the policy issued by defendant to Hy–Tech provided coverage for two (2) motor vehicles owned by Hy–Tech for the personal use of plaintiff. This clearly falls within the ambit of *Lastooka.* The defendant should have been aware that this would not be a standard fleet policy and that stacking was within the reasonable expectations of both parties.

To summarize, this Court has determined that Mr. Ober is a class one insured under a policy in which his corporation was the "named insured," and that stacking is permitted on the two personal use vehicles listed therein. Since plaintiff has class one status, under *Contrisciane* his resident relatives would also have stacking privileges. Though defendant is concerned about a bifurcated class, such cannot occur based upon the definition of a "class one insured" under Pennsylvania Law.

Defendant's fear of open ended uninsured/underinsured motorist coverage is unfounded. Defendant, as insurer and drawer of the contract, has the burden of making inquiries as to whom the insured wishes to cover with the policy. The number of intended beneficiaries is ascertainable. If the insured wishes corporate directors and officers to be covered in a policy, and defendant wishes to write such policy, then in defendant's own words, the insurer has assumed the risk that such individuals covered may have fifteen resident relatives. The chaos of which the defendant speaks occurs when misinformed, or poorly informed, insureds are

**350**

denied the very coverage they intended to purchase.

For the above reasons, defendant's Motion for Reconsideration and Amendment of Judgment shall be denied.