938 A.2d 301

Robert D. EVERHART and Christine J. Yost, Administrators of the Estate of Robert E. Everhart, Deceased, Appellants,

v.

The PMA INSURANCE GROUP, a Pennsylvania Corporation, Meyer & Eckenrode Insurance Group, a Pennsylvania Business Entity, State Farm Mutual Automobile Insurance Company, an Illinois Corporation, and Russell Standard Corp., a Pennsylvania Corporation, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 10, 2007.

Decided Dec. 27, 2007.

174

Scott B. Cooper, Esq., Schmidt Kramer, P.C., Bryan D. Fife, Esq., Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., John Francis Kroto, Esq., Erie, for Robert D. Everhart and Christine J. Yost.

Frank P. Murphy, Esq., Murphy Woodward & Haskins, Norristown, for Pennsylvania Trial Lawyer's Association.

William Wagner, Esq., Marnen Mioduszewski Bordonaro Wagner & Sinnott, L.L.C., for State Farm Mutual Automobile Insurance Company.

Mark Edwin Mioduszewski, Esq., Marnen Mioduszewski Bordonaro Wagner & Sinnott, L.L.C., for PMA Insurance Group, et al.

James C. Haggerty, Esq., Swartz Campbell, L.L.C., Philadelphia, for Insurance Federation of Pennsylvania, et al.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Chief Justice CAPPY.

In this appeal by allowance we are asked to resolve the issue of whether the Pennsylvania Motor Vehicle Financial Responsibility Law (the "MVFRL"), 75 Pa.C.S. § 1701–1799.7, mandates the "stacking" of uninsured/underinsured ("UM/UIM") motorist coverage under a commercial fleet policy. The concept of stacking relates to the ability to add coverages from other vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy. *McGovern v. Erie Insurance Group*, 796 A.2d 343 (Pa.Super.2002). As explained in greater detail below, we hold that the MVFRL does not mandate the stacking of UM/UIM coverage under a commercial fleet policy. Thus, we affirm the order of the Superior Court.

The relevant facts underlying this appeal are not contested. On July 26, 2001, Robert E. Everhart ("Everhart") died following an automobile accident in Erie County, Pennsylvania in which Everhart's vehicle was struck by another vehicle operated by Karen Anne Stellmach. At the time of the accident, Everhart was President and CEO of the Northwest Division of Russell Standard Corporation ("Russell Standard"). At the time of the accident, Everhart was operating a 2001 Chevrolet Tahoe, which was leased by Russell Standard.

Russell Standard insured the vehicle driven by Everhart under a commercial automobile fleet policy issued by Appellee PMA Insurance Group ("PMA"). Russell Standard was the named insured on the policy. The PMA policy at issue is "Business Automobile Policy" number 1500007089857. On the first page of the common policy declarations, Russell Standard is listed as the sole named insured.[1] At the time of the accident, the policy covered Russell Standard's three hundred twenty-three vehicles, including thirty-three passenger vehi-

---

1. While Russell Standard, not Everhart, was the named insured on the declarations page of the policy, Everhart was named in two separate endorsements to the policy. He was named in the "Broadened First Party Medical Benefits" endorsement and the "Drive Other Car Coverage–Broadened Coverage for Named Individuals" endorsement.

cles such as the one driven by Everhart. Although the PMA policy provided Russell Standard with $1,000,000 in liability coverage, the UM/UIM coverage was reduced to only $35,000. As a matter of course, PMA does not offer stacked UM/UIM coverage to commercial insureds. As such, no waiver of stacked UM/UIM coverage was made by Russell Standard.

Robert D. Everhart and Christine Yost, as administrators of Mr. Everhart's estate (the "Estate") collected the policy limits from Infinity Insurance Company, which insured the Stellmach vehicle. Thereafter, the Estate sought UIM motorist coverage. The Estate filed a declaratory judgment action against PMA, seeking clarification that the Russell Standard policy provided Everhart with stacked UIM coverage based on the thirty-three private passenger vehicles in the Russell Standard fleet. Thus, the Estate contended that the available limit of UIM coverage is $35,000 multiplied by thirty-three, or $1,155,000. After all pleadings were filed and discovery was completed, the parties filed cross motions for summary judgment.

The trial court granted PMA's motion and denied the Estate's motion. The trial court concentrated on the fact that Russell Standard was the named insured. Russell Standard, as the named insured, was the only class one insured, and in reliance upon precedent establishing that only a class one insured may stack coverage, the trial court concluded that this effectively precluded Everhart from benefiting from stacked coverage. The Estate appealed the trial court's decision to the Superior Court.

A unanimous Superior Court affirmed on other grounds. Rather than focusing upon whether Everhart was a class one insured, the Superior Court resolved the appeal on the principle that absent agreement by the parties, "coverages under a fleet policy may not be stacked." Majority Opinion at p. 181, 938 A.2d at p. 306 (quoting *Miller v. Royal Ins. Co.*, 354 Pa.Super. 20, 510 A.2d 1257, 1258 (1986), *aff'd per curiam*, 517 Pa. 306, 535 A.2d 1049 (1988)). The Superior Court emphasized that mandating the stacking of coverage in a fleet policy pursuant to Section 1738 would "make premium costs prohibi-

tively expensive and would not be within the reasonable expectations of the insurer and the employer-policyholder...." *Id.* (quoting *Miller*, 510 A.2d at 1259). Thus, relying on prior case law, the Superior Court affirmed the order of the trial court denying the Estate's claim of entitlement to stacked coverage. Thereafter, the Estate appealed to our Court.

■ We granted the Estate's petition for allowance of appeal to determine, *inter alia,* whether Section 1738 mandates the stacking of UM/UIM motorist coverage provided in a commercial fleet policy.[2]

The Estate argues that pursuant to Section 1738 of the MVFRL all policies of insurance are required to provide for stacking of UM/UIM motorist coverage unless a valid waiver is executed by the named insured. The PMA policy does not contain a valid waiver of stacking and as Russell Standard did not execute such a waiver, stacking of UM/UIM motorist coverage exists. The Estate offers that the Superior Court decision, which rested upon its decision in *Miller,* was in error because Section 1738 was enacted after *Miller* was decided and the language of that statute draws no distinction between commercial and non-commercial policies. As the statute does not provide any exceptions for commercial policies, the Estate submits that the General Assembly intended that absent waiver, the requirement of stacking apply to all policies, commercial and non-commercial alike.

PMA, along with Meyer & Eckenrode Insurance Group, the independent insurance agents from whom Russell Standard purchased the coverage, and Russell Standard, (collectively, the "Insurers") contend that the Superior Court reached the correct decision. First, the Insurers point out the practical differences between commercial fleet policies and non-commercial policies, and urge our Court to give effect to the intent of these sophisticated parties as expressed in the policy language upon which they agreed, i.e., that neither Russell

---

**2.** This issue raises a question of law; accordingly our standard of review is *de novo,* and our scope of review, to the extent necessary to resolve the legal question before us, is plenary. *Swords v. Harleysville Insurance Companies,* 584 Pa. 382, 883 A.2d 562, 567 (2005).

Standard nor PMA expected the policy to provide an employee with stacked UM/UIM coverage, and that no premiums were paid for stacked UM/UIM coverage. According to the Insurers, a determination that stacking was provided here would increase premiums and such increase would be passed on to insureds. Finally, the Insurers assert that the enactment of Section 1738 did not herald any change in the law then existing under *Miller*, because Section 1738 does not address fleet policies.

■ The question of whether Section 1738 mandates the stacking of coverage under a commercial fleet policy raises an issue of statutory construction; therefore we are guided by the Statutory Construction Act. 1 Pa.C.S. § 1501 *et seq.* "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly . . . ." 1 Pa.C.S. § 1921(a). In this regard, when "the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When the words of a statute are not explicit, however, the General Assembly's intent is to be ascertained by considering matters other than the statutory language. 1 Pa.C.S. § 1921(c). These considerations include the occasion and necessity for the statute; the object the statute seeks to attain; the former law on the same or similar subjects; and consequences of a particular interpretation. *Id.* With these considerations in mind, we turn to an analysis of the General Assembly's intent regarding stacking under a commercial fleet policy.

Section 1738 of the MVFRL, effective July 1, 1990, is entitled "Stacking of uninsured and underinsured benefits and option to waive." Section 1738 provides:

(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall

be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver.—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle.—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d) Forms.—(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

## UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____

Signature of First Named Insured

_____

Date

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

### UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____

Signature of First Named Insured

_____

Date

75 Pa.C.S. § 1738.

Contrary to the Estate's assertion, we do not find this language to be an *unambiguous* indication that stacking is mandated under a commercial fleet policy. Indeed, the statute is utterly silent as to whether stacking is mandated in this unique context. Moreover, ascertain language employed by the Legislature indicates, the General Assembly intended to *exclude* commercial fleet policies from its purview. Specifically, subsection (d) provides the required form for the waiver of stacking. It states, in relevant part: "By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for **myself and members of my household**...." 75 Pa.C.S. § 1738(d)(1)(emphasis supplied). Likewise, the statute provides the same language for waiving stacked underinsured coverage. 75 Pa.C.S. § 1738(d)(2). Thus, while not entirely free from ambiguity, there is at least a strong indication that the General Assembly did not intend

for mandatory stacking of coverage under a commercial fleet policy.

As the plain language of the statute offers no explicit directive on whether stacking of coverage is mandated under a fleet policy, we attempt to ascertain the intent of the General Assembly by review of certain other considerations. 1 Pa.C.S. § 1921(c); *Washington v. Baxter,* 719 A.2d 733, 738–739 (1998).

■ First, we consider the occasion and necessity for the statute and the object the statute seeks to attain. The primary purpose of the MVFRL, and especially the 1990 amendments of which Section 1738 was a part, was to control the cost of insurance such that a higher percentage of drivers would be able to afford insurance. *Craley v. State Farm Fire and Casualty Company,* 586 Pa. 484, 895 A.2d 530, 541 n. 17 (2006). As the Superior Court has indicated, the stacking of coverage under commercial fleet policies, covering perhaps hundreds or thousands of cars, would lead to prohibitive premium costs. *Miller,* 510 A.2d at 1258. Thus, to find that Section 1738 mandates stacking coverage under a commercial fleet policy would under-cut the primary purpose of the statute.

■ Second, and related thereto, we address the consequences of particular interpretations of the statute. As expressed by the Superior Court in *Miller,* "[o]ne of the most common reasons for denying stacking of fleet policies is that such policies potentially cover a multitude of vehicles. It is argued 'that to allow stacking would . . . not be within the reasonable expectations of the insurer or the employer policy holder.'" *Miller,* 510 A.2d at 1258 (quoting *Yeager v. Auto-Owners Insurance Co.,* 335 N.W.2d 733, 739 (Minn.1983)); *see also* Uninsured and Underinsured Motorist Insurance § 13.11 ("It seems evident—that is, beyond disputing—that neither the insurer nor the purchaser of uninsured motorist insurance included in a 'fleet policy' contemplates the stacking of coverage for the enhanced protection of persons who are insured as occupants of an insured vehicle."). Thus, not only would requiring the stacking of coverage under a commercial fleet

policy lead to prohibitively expensive premium costs, it would be inconsistent with the reasonable intent of the contracting parties, the insurer and the insured.

Third, we discern the intent of the General Assembly by consideration of former law on this subject. While the MVFRL was enacted in 1984, Section 1738 was only added in 1990. At the time of the 1990 amendment to the MVFRL, there already existed a body of decisional law holding that stacking of uninsured and underinsured motorist coverage did not apply to commercial fleet policies. *See Miller;  see also Lastooka v. Aetna Insurance Co.,* 380 Pa.Super. 408, 552 A.2d 254 (1988); *Thompson v. Royal Insurance Co.,* 361 Pa.Super. 78, 521 A.2d 936 (1986); *Boris v. Liberty Mutual Insurance Co.,* 356 Pa.Super. 532, 515 A.2d 21 (1986). Indeed, one year before the addition of Section 1738 to the MVFRL, our Court, citing *Miller,* affirmed the prohibition against requiring the stacking of uninsured motorist coverage under a fleet policy. *Selected Risks Insurance Co. v. Thompson,* 520 Pa. 130, 552 A.2d 1382, 1387 (1989).

It is well established that "statutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions." *Carrozza v. Greenbaum,* 591 Pa. 196, 916 A.2d 553, 566 (2007)(quoting *Commonwealth v. Miller,* 469 Pa. 24, 364 A.2d 886, 887 (1976)). Thus, the Court will not disturb established legal principles without express direction from the Legislature. *Carrozza,* 916 A.2d at 565–66.

At the time Section 1738 was enacted, there was a thorough and unanimous body of appellate case law from this Commonwealth explicitly holding that stacking of UM/UIM coverage is not mandated for commercial fleet policies. We presume that the Legislature was aware of this body of law. There is nothing in Section 1738 which addresses, expressly disturbs, or abrogates this line of cases. We find that the provisions of Section 1738 are to be read in conjunction with, not in contradiction to, the pre-existing common law. As such, we interpret the provisions of Section 1738 in conjunction with the

well-founded common law rule that UM/UIM stacking is not required for commercial fleet policies.

■ Based upon this statutory construction analysis, we hold that the General Assembly did not intend to mandate the stacking of coverage under commercial fleet policies pursuant to Section 1738 of the MVFRL. Having found that stacking of coverage is not required under commercial fleet policies, we affirm the order of the Superior Court denying the Estate's claim of entitlement to stacked coverage under Russell Standard's commercial fleet policy.[3]

Jurisdiction relinquished.

Justice CASTILLE, SAYLOR, EAKIN, BAER and FITZGERALD join the opinion.

Justice BALDWIN files a concurring opinion.

Justice BALDWIN, concurring.

I concur in the result of the majority opinion, but based upon different reasoning. I agree with the majority that "[t]he question of whether Section 1738 mandates the stacking of coverage under a commercial fleet policy raises an issue of statutory construction; therefore we are guided by the Statute Construction Act. 1 Pa.C.S. § 1501 *et seq.*" Majority op. at 178, 938 A.2d at 304. However, the analysis employed by the majority delves into the intent of our Legislature in enacting 75 Pa.C.S. § 1738 when the words of the subject statute are clear, i.e. there is no ambiguity and the majority fails to cite one. Therefore, pursuant to 1 Pa.C.S. § 1921(b), the role of this Court is to give effect to the words of the statute without reviewing the factors delineated in 1 Pa.C.S. § 1921(c) which are to be considered only if "the words of the statute are not explicit."[1]

---

3. The Estate also contests the trial court's determination that Everhart was not a class one insured. As our resolution of the issue of whether Section 1738 mandates that UM/UIM motorist coverage provided in a commercial fleet policy be stacked is dispositive of this matter, we need not address this issue.

1. Legislative intent controls.

Stacking of uninsured and underinsured benefits and option to waive.

(a) Limit for each vehicle. When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver. Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle. Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
   (1) The occasion and necessity for the statute.
   (2) The circumstances under which it was enacted.
   (3) The mischief to be remedied.
   (4) The object to be attained.
   (5) The former law, if any, including other statutes upon the same or similar subjects.
   (6) The consequences of a particular interpretation.
   (7) The contemporaneous legislative history.
   (8) Legislative and administrative interpretations of such statute.
1  Pa.C.S. § 1921.

shall be reduced to reflect the different cost of such coverage.

(d) Forms.

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

. . .

. . .

75 Pa.C.S. § 1738.

To determine if stacked coverage is available in the instant case, it must first be ascertained whether Russell Standard Corporation was an "insured" for purposes of Section 1738. If Russell Standard Corporation was not an "insured," whether stacking of UM/UIM coverage was waived becomes irrelevant. For reasons explained below, I would conclude that a corporation, such as Russell Standard, is not an "insured" within the definition of that term set forth in Section 1702 of the Pennsylvania Motor Vehicle Financial Responsibility Law (the MVFRL), 75 Pa.C.S. §§ 1701–1799.7. For purposes of this analysis and by definition, Everhart was a class two insured by virtue of his presence in a covered vehicle. *See Utica Mutual Ins. Co. v. Contrisciane*, 504 Pa. 328, 337–39, 473 A.2d 1005, 1010 (1984).

Section 1738, which establishes the statutory parameters for stacking of UM/UIM benefits, expressly limits the provision of coverage "available under this subchapter for *an insured*," and explains that only a "named insured" may waive stacking of UM/UIM benefits. 75 Pa.C.S. § 1738(a),(b) (emphasis added). Section 1738(c) further explains "each named insured purchasing" UM/UIM coverage is mandatorily provided the opportunity to waive the available stacked limits of it. Section 1738(d) prescribes the forms by which a "named insured" is advised that "he" may waive UM/UIM coverage.

Turning to Section 1702 of the MVFRL, an "insured" is defined as:

Any of the following:

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

(2) If residing in the household of the named insured:

(i) a spouse·or other relative of the named insured; or

(ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S. § 1702. Section 1702 provides the definition of who is a "named insured," and explains that human beings with specific relationships to a "named insured" are also "insureds."[2] There is no definition for a "named insured" who is not a human being.[3] *See e.g. Ins. Co. of Evanston v. Bowers*, 758 A.2d 213 (Pa.Super.Ct.2000) (a corporation does not fall within the definition of an "insured" set forth in Section 1702); *Employers Mut. Cas. Co. v. Loos*, 476 F.Supp.2d 478, 485 (W.D.Pa.2007) (explaining that [t]he MVFRL's definition [of an insured], by its language, is applicable only where the named insured *is an individual person.*) (emphasis added); *See also U.S. Fidelity and Guar. Co. v. Tierney Assoc., Inc.*, 213 F.Supp.2d 468 (M.D.Pa.2002).

Given this construction of Section 1702, Appellants' reliance upon the lack of a Section 1738(b) waiver proves unavailing.

**2.** This is consistent with the policy language, which states:

. . .
B. Who Is An Insured
1. You.
2. If you are an individual, any "family member."

. . .
R. 476–77a.

**3.** I find further support for this construction by reading the various provisions of the subject statute, as they must be read, *in pari materia.* 1 Pa.C.S. § 1932. While Section 1702(1) standing alone could be read to include all individuals identified by name anywhere in the policy, raising questions about the importance of Everhart's inclusion by name on the endorsements described above, this becomes impossible when read in the light provided by Section 1702(2). In Section 1702(2), the Legislature explains that the "individual" in Section 1702(1) is in fact the "named insured." Section 1702(2) also limits which human beings are to be accorded the status of "insured" vis a vis their relationship with the "named insured" described in Section 1702(1). No human being could ever fall within Section 1702(2) if Section 1702(1) was meant by the Legislature to include the corporate form; a corporation has neither a household nor resident relatives.

As explained above, there is no "named insured," for purposes of the MVFRL, in the subject policy. Therefore, when a commercial fleet policy is issued to a corporate entity, as here, the only scenario under which a human being would fall within the definition of an "insured" under Section 1702 such that he or she would be entitled to the provisions of Section 1738 is if the corporation specifically named him. Russell Standard Corporation could never have purchased—let alone waived—stacking of UM/UIM benefits in the first place.

I agree with the majority that the Superior Court's decision in *Miller v. Royal Ins. Co.*, 354 Pa.Super. 20, 22, 510 A.2d 1257, 1258 (1986), *aff'd per curiam*, 517 Pa. 306, 535 A.2d 1049 (1988), was clear that UM/UIM coverage could not be stacked under a fleet, i.e. commercial, policy.[4] This Court has repeatedly explained that statutes are to be read to be in accord with existing case law. *See e.g. March v. Philadelphia West Chester Traction Co.*, 285 Pa. 413, 415, 132 A. 355, 356 (1926). *Miller* was case law when Section 1738 was enacted.[5] I find that the clarity of the holding in *Miller*, coupled with the presumption that statutes are in accord with existing common law principles, provides additional, although perhaps unnecessary, support for the conclusion that the plain language of the MVFRL does not countenance stacking under circumstances like those presented here. Consequently, I agree with the majority that the decision of the Superior Court should be affirmed.

---

4. This concurring opinion is driven by my reading of the language of Sections 1702 and 1738 of the MVFRL, rather than either an interpretation of a policy goal, as explained above, *or* the imputation of expectations upon commercial insureds and their insurers.

5. *Miller* was decided by the Superior Court in 1986 and affirmed by this Court in 1988. Section 1738 was enacted in 1990.