**Michael S. HUTCHISON, Jr., by Mary J. HUTCHISON, Parent and Natural Guardian, Appellants**

v.

**Father Francis LUDDY, Michael E. Servinsky, Executor of the Estate of James J. Hogan, Deceased, and Diocese of Altoona–Johnstown.**

Superior Court of Pennsylvania.

Argued June 13, 2007.

Filed April 2, 2008.

Richard M. Serbin, Altoona, for appellants.

Eric N. Anderson, Pittsburgh, for appellees.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Michael S. Hutchison, Jr., by Mary J. Hutchison, parent and natural guardian, appeals from the order entered on October 4, 2006, in the Court of Common Pleas of Blair County.

¶ 2 In this latest controversy, we consider whether the entry of judgment *non obstante veredicto* ("JNOV") by this Court on two previous occasions, both of which were subsequently vacated by our Supreme Court, deprives Michael of post-judgment interest on a claim for punitive damages, for the period of time that the JNOV was in effect, when the damage award was ultimately affirmed. For the reasons set forth below, we hold that the erroneous entry of JNOV does not preclude Michael from collecting post-judgment interest dating back to the date of the jury's verdict. Accordingly, we reverse.

¶ 3 This case has been mired in the appellate process since 1994. As will be discussed, this Court and the Supreme Court of Pennsylvania have ruled on this case on five previous occasions. Needless to say, the details of the various rulings and the case's procedural history are extensive. The disposition of this appeal, however, does not require a lengthy and detailed discussion of the previous appeals. For that we refer the reader to this Court's comprehensive opinion in *Hutchison ex rel. Hutchison v. Luddy*, 896 A.2d 1260 (Pa.Super.2006). Below we set forth only so much of the factual and procedural history as is necessary to resolve the dispositive issue presented on appeal.

¶ 4 This litigation is the result of the sexual molestation of Michael by Father Francis Luddy, over a period of several years, while Father Luddy worked at St. Therese's Catholic Church in the Diocese of Altoona–Johnstown. Bishop James J. Hogan served as Bishop of the Diocese at the time of the incidents. Michael, through his mother, Mary J. Hutchison, as parent and natural guardian, filed suit against Father Luddy, St. Therese's Church, the Diocese, and Bishop Hogan in 1987.

¶ 5 Six years later, on April 21, 1994, after an eleven week trial, the jury returned a verdict in favor of Michael and against all defendants. The jury found that Father Luddy had sexually molested Michael and that the molestation caused Michael harm; that the church knew that Father Luddy had been engaged in pedophilic relations with minors; that the church's failure to warn based on their knowledge was a substantial factor in bringing about Michael's harm; that the Diocese and/or Bishop Hogan were negligent in their retention or supervision of

Father Luddy and that their negligence was a substantial factor in bringing about Michael's harm; and that Bishop Hogan and the Diocese had a policy and practice of knowing, ignoring or failing to investigate claims that priests assigned within the Diocese engaged in pedophilic activities and that this practice was a substantial factor in bringing about Michael's harm.

¶ 6 The jury apportioned the percentage of liability of each defendant as follows: Father Luddy 36%; Bishop Hogan and/or the Diocese 53%; and the Church 11%. The jury awarded the amount of $519,000.00 in compensatory damages; punitive damages in the amount of $50,000.00 against Father Luddy; and punitive damages of $1,000,000.00 against St. Therese's Catholic Church, Bishop Hogan, and the Diocese (collectively the "Diocesan Parties").

¶ 7 Following the denial of Father Luddy's and Diocesan Parties' post-trial motions, and subsequent entry of the judgment, each filed an appeal to this Court. Father Luddy's appeal was dismissed. The Diocesan Parties' appeal was addressed on the merits.

¶ 8 The panel addressed a single issue: "Whether the trial court erred in allowing Michael to proceed under the theory set forth in Restatement (Second) of Torts § 317 for negligent hiring, supervision, and retention of Luddy by appellants." *Hutchison by Hutchison v. Luddy,* 453 Pa.Super. 420, 683 A.2d 1254, 1255 (1996) ("*Hutchison I* "). Writing for the majority, the Honorable John G. Brosky held that the Diocesan Parties could not be held liable pursuant to § 317. The Honorable Patrick J. Tamilia concurred in the result, thereby entering judgment notwithstanding the verdict in favor of all of the Diocesan Parties. *See id.,* at 1256. Judge Ford

Elliott, now President Judge, filed a dissent. *See id.,* at 1256–1261.

¶ 9 Michael appealed and our Supreme Court granted *allocatur. See Hutchison by Hutchison v. Luddy,* 548 Pa. 659, 698 A.2d 67 (1997). The Pennsylvania Supreme Court vacated a portion of this Court's order, ruling that the jury properly found the Diocesan Parties liable pursuant to § 317, *see Hutchison ex rel. Hutchison v. Luddy,* 560 Pa. 51, 67, 742 A.2d 1052, 1060 (1999) (plurality) ("*Hutchison II* "), but affirmed this Court's order in so far as it entered judgment in favor of St. Therese, *see id.,* 560 Pa. at 61, 742 A.2d at 1057. Our Supreme Court then remanded the case to this Court to consider the issues raised, but not decided, in the prior appeal, *Hutchison I.*

¶ 10 On remand, this Court ruled, *inter alia,* that the only cause of action that could support an award of damages was the § 317 claim. The panel on remand further reasoned that because punitive damages cannot be based upon ordinary negligence, the § 317 claim, which the panel noted sounded in ordinary negligence, could not support the claim for punitive damages. *See Hutchison ex rel. Hutchison v. Luddy,* 763 A.2d 826, 837 (Pa.Super.2000) ("*Hutchison III* "). Accordingly, this Court reversed that portion of the verdict imposing punitive damages, entered JNOV in favor of the Diocesan Parties as to that claim, but otherwise affirmed the judgment in all other respects. *See id.,* at 853.

¶ 11 Michael again appealed and our Supreme Court again granted *allocatur* "to consider the question of whether the Superior Court properly determined that a negligent supervision claim sounding under Section 317 can never support an award of punitive damages." *Hutchison ex rel. Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766 (2005) ("*Hutchison IV* "). The Su-

preme Court held that "there is no general proscription in law against pursuing punitive damages in the Section 317 context, where the facts so warrant." *Id.*, 582 Pa. at 126, 870 A.2d at 773. Therefore, the Supreme Court vacated this Court's order and "remand[ed] the matter to the Superior Court to determine whether the jury's award of punitive damages against the Diocesan Parties was properly supported by the evidence." *Id.*

¶ 12 On remand, this Court methodically reviewed the evidence and concluded that the evidence supported the jury's punitive damage award against the Diocesan Parties. *See Hutchison ex rel. Hutchison v. Luddy*, 896 A.2d 1260, 1275 (Pa.Super.2006) (*"Hutchison V"*). Accordingly, this Court affirmed "the trial court's entry of judgment in favor of Michael in the amount of $1 million in punitive damages." *Id.*

¶ 13 On April 20, 2006, the Diocesan Parties filed the motion which brings the case again before us, *i.e.*, for a determination of interest on the punitive damage award. Basically, the Diocesan Parties argued to the trial court that the interest due on the punitive damages award must be consistent with "the decision of the Commonwealth Court of Pennsylvania in *Green Valley Dry Cleaners, Inc. v. Westmoreland County Industrial Development Corporation*, 861 A.2d 1013 (Pa.Cmwlth. 2004), which held that interest accrues only on a verdict when the verdict has not been vacated." Motion for Determination of Interest on Punitive Damage Award, 4/20/06, at ¶ 17. In the motion, the Diocesan Parties calculated the punitive damage award to be, with interest, $1,202,191.78. The Diocesan Parties calculated the post-judgment interest figure to be $202,191.78,

by noting that the verdict remained in effect for 1,230 days because they excluded the time from September 4, 1996 to November 24, 1999, as they maintain that "the verdict had been vacated," and from October 25, 2000 to March 22, 2006, as "there was a valid JNOV in effect." Brief in Support of Motion for Determination of Interest on Punitive Damage Award, 4/20/06, at 5.

¶ 14 On May 4, 2006, Michael filed a response to the motion and a brief in support thereof in which he maintained that he was entitled to post-judgment interest in the amount of $720,000.00, which he calculated as the period from April 21, 1994 to April 21, 2006. Michael also argued that the Commonwealth Court's decision in *Green Valley Dry Cleaners, Inc. v. Westmoreland County Indus. Dev. Corp.*, 861 A.2d 1013 (Pa.Cmwlth.2004), was inapplicable.

■ ¶ 15 The trial court conducted argument on the Diocesan Parties' motion on May 18, 2006. On October 4, 2006, the trial court entered an order in which it granted the motion. In its accompanying decision, the trial court explained that *Green Valley Dry Cleaners, Inc.* controlled the outcome.[1] In applying that decision, the trial court found that Michael had lost "his status as the verdict winner" on September 4, 1994, "when the Superior Court vacated the verdict in its entirety." Trial Court Opinion, 10/4/06, at 4. The trial court further explained that

> [t]he Plaintiff did not become the verdict winner again on his punitive damage claim until March 22, 2006, when, after further review and appeals, the Superior Court entered an Order that the record did support an award of punitive dam-

1. "Although we agree that the decisions of the Commonwealth Court are not controlling in matters before the Superior Court, they remain precedential in trial courts across the Commonwealth." *Stackhouse v. Stackhouse*, 862 A.2d 102, 105 (Pa.Super.2004).

ages and affirmed the verdict entered by the jury on punitive damages. Clearly, from September 4, 1996, until March 22, 2006, no argument can be made that the Plaintiff was the verdict winner of record on the punitive damage award.

*Id.* In a "postscript" to its decision, however, the trial court explained that it was troubled by the result. The trial court expressed its uneasiness as follows:

Authoring the Opinion set forth above, we have followed what we believe is present Pennsylvania Law applicable to this case. However, we would be less than candid if we did not admit that we are somewhat troubled by this decision. Because of the tortuous route this case has taken through the Appellate Courts by our decision[,] Plaintiff loses *ten (10) years interest* notwithstanding that he was completely successful at first the [t]rial [c]ourt level and again (ultimately) at the Appellate level. In *Green Valley,* that Court was mindful of prejudice to the Defendant in requiring interest where there was no verdict. On the facts of *Green Valley,* that created only limited prejudice to Plaintiff because the delay in overturning the [t]rial [c]ourt[']s entry of j.n.o.v. was only twelve (12) months. In this case, however, the delay was ten (10) years. There is no denying the simple economic reality that a delay of that magnitude has substantially devalued the jury's verdict. It should be remembered that interest on an award is not designed to punish a defendant. Rather, [42 PA. CONS.STAT. ANN. § ]8101 exists largely to protect the value of Plaintiff's verdict while motivating a Defendant to think twice before filing an appeal merely as a matter of course. In this case, there is no denying the substantial real loss to Plaintiff by our present refusal to award

interest. While addressing equity on its peculiar facts as noted above, the *Green Valley* decision does not address the "shifting equities" which can be presented by different fact situations. If there is a further review of this decision, these are matters worthy of consideration if a reviewing Court believes these cases are more properly decided on a case-by-case basis.

*Id.,* at 7–8.

¶ 16 This timely appeal followed, in which Michael raises the following issues for our review:

1. WHEN A JUDGMENT ENTERED ON A JURY'S VERDICT AWARDING DAMAGES IS REVERSED ON APPEAL AND LATER REINSTATED, IS THE ORIGINAL PREVAILING PARTY ENTITLED TO POST JUDGMENT INTEREST FOR THE PERIOD OF TIME DURING WHICH THE JUDGMENT WAS ERRONEOUSLY VACATED?

   . . .

2. WHERE PLAINTIFF'S ORIGINAL VERDICT IS REINSTATED AFTER TWELVE (12) YEARS OF APPEALS, DOES EQUITY REQUIRE THAT THE ORIGINAL PREVAILING PARTY RECEIVE POST JUDGMENT INTEREST FOR THE ENTIRE PERIOD THE PAYMENT OF MONIES WAS WITHHELD BY THE DEBTOR?

   . . .

Appellant's Brief, at 2.

■ ¶ 17 Michael's first issue[2] centers squarely on the interpretation of a statute, 42 PA. CONS.STAT. ANN. § 8101. As

---

**2.** Given our disposition we need not reach Michael's second issue presented on appeal.

with all questions of law, the appellate standard of review is *de novo* and the scope of review is plenary. *See R.M. v. Baxter ex rel. T.M.*, 565 Pa. 619, 624, 777 A.2d 446, 449 (2001); *Little–Stepp v. Cancilla*, 896 A.2d 647, 649 (Pa.Super.2006).

■ ¶ 18 Section 8101 of the Judicial Code controls the imposition of interest on judgments:

> Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa. Cons.Stat. Ann. § 8101. "[F]or purposes of computing interest, judgment and verdict are synonymous, and the date from which interest accrues is the date of the verdict, not the date judgment is finally entered." *Incollingo v. Ewing*, 474 Pa. 527, 537, 379 A.2d 79, 84 (1977).[3] *See also* 10 Standard Pennsylvania Practice 2d § 65:139, **Date from which interest accrues, generally.**[4]

¶ 19 As mentioned, the trial court agreed with the Diocesan Parties' contention that the Commonwealth Court's decision in *Green Valley Dry Cleaners, Inc.* controls. As stated above, we note that this Court "is not bound by any decision of the Commonwealth Court," although we have great respect for the decisions of our sister court. *Forrester v. Hanson*, 901 A.2d 548, 552 n. 3 (Pa.Super.2006) (citation omitted).

¶ 20 In *Green Valley Dry Cleaners, Inc.*, a jury awarded damages, on February 15, 2002, to Green Valley Dry Cleaners, Inc. and against Westmoreland County Industrial Development Corporation. Thereafter, Westmoreland County Industrial Development Corporation filed a motion for post-trial relief. The trial court granted the motion on September 12, 2002, and entered JNOV in favor of Westmoreland County Industrial Development Corporation. Green Valley Dry Cleaners, Inc. appealed and the Commonwealth Court, on September 4, 2003, reversed the trial court's entry of JNOV and reinstated the original jury verdict.

¶ 21 On remand, Green Valley Dry Cleaners, Inc. filed a motion seeking to have the verdict amended to include post-judgment interest from the date of the jury's award, February 15, 2002. The trial court ordered that while post-judgment interest accrues from the date of the jury award, Green Valley Dry Cleaners, Inc. was precluded from recovering such interest for the time period during which JNOV was entered in Westmoreland County Industrial Development Corporation's favor. Accordingly, the trial court molded the verdict "to reflect post-judgment interest from the date of the verdict forward with the exclusion of the period the valid judgment notwithstanding the verdict was in effect." *Green Valley Dry Cleaners, Inc.*, 861 A.2d at 1015. Green Valley Dry Cleaners, Inc. again appealed.

---

**3.** "In *Incollingo*, our Supreme Court construed the language contained in the Act of April 6, 1859, P.L. 381, 12 P.S. § 781 (repealed). Section 8101 of the Judicial Code, 42 Pa.C.S. § 8101, is substantially a reenactment of that act." *Green Valley Dry Cleaners, Inc. v. Westmoreland County Indus. Dev. Corp.*, 861 A.2d 1013, 1016 n. 6 (Pa.Cmwlth. 2004).

**4.** Our distinguished former colleague, the Honorable Phyllis W. Beck, wrote in *Perel v. Liberty Mut. Ins. Co.*, 839 A.2d 426, 428 (Pa.Super.2003): "[T]he date of the original award or verdict is the significant start date for the accrual of interest, even where the verdict was later molded or otherwise corrected."

¶ 22 The Commonwealth Court noted that Green Valley Dry Cleaners, Inc.'s appeal presented an issue of first impression: "when a judgment *non obstante veredicto* (NOV) is reversed on appeal, is the original prevailing party entitled to post-judgment interest for the period of time that the judgment NOV was in effect?" *Id.*, at 1014. The Commonwealth Court quoted § 8101 and *Incollingo* and ruled that "[a]pplying the general rule to this case, that postjudgment interest follows the verdict, we must reject Green Valley's position." *See id.*, at 1016.

¶ 23 The Commonwealth Court reasoned that JNOV may rest on two bases and that in either it directs a verdict in favor of a losing party, notwithstanding the previous verdict to the contrary. *See id.* Basically, the Commonwealth Court ruled that Green Valley Dry Cleaners, Inc. was entitled to postjudgment interest during the period it was the "verdict winner," meaning from February 15, 2002, the date of the jury's verdict, to September 12, 2002, when the trial court entered JNOV, and from the date Green Valley again became the "verdict winner," on September 4, 2003, the date that the Commonwealth Court reversed the trial court's award of JNOV to Westmoreland County Industrial Development Corporation. Accordingly, the Commonwealth Court held that Green Valley Dry Cleaners, Inc. was only entitled to post-judgment interest for the time periods in which it was the "verdict winner," and explained its holding as follows:

> The trial court's entry of judgment NOV effectively nullified the original jury decision and directed a verdict in favor of WCIDC. While the JNOV was in effect there was simply no verdict in Green Valley's favor on which to compute interest. Indeed, during that time WCIDC had no reason to believe it owed Green Valley anything, and a party so situated must be allowed to rely on

a valid judgment entered by a court of competent jurisdiction. Adopting Green Valley's position would be tantamount to holding WCIDC accountable for the trial court's legal error. This we will not do.

*Id.*

¶ 24 As noted, in applying *Green Valley Dry Cleaners, Inc.*, the trial court found that Michael was the verdict winner from April 21, 1994 until September 4, 1996, when this Court vacated the verdict in its entirety. The trial court further found that Michael did not become the verdict winner again on the punitive damages claim until March 22, 2006, when this Court held that the record supported the imposition of punitive damages and affirmed the jury's award of such damages. The trial court explained its rejection of Michael's attempt to distinguish *Green Valley Dry Cleaners, Inc.* as follows:

> The most that Plaintiff can claim is that, unlike the Plaintiff in *Green Valley,* which had no "verdict" when the case entered the Appellate Court[ ] as a result of the [t]rial [c]ourt's grant of j.n.o.v., in this case the Plaintiff had a verdict reduced to judgment and only lost the verdict subsequently during the appeals process. We find this, however, a distinction without a difference. The principle established in *Green Valley* is that interest is based on the presence of a verdict (not a judgment). Absent that verdict, the Defendant has no obligation and the Plaintiff has no entitlement [to post-judgment interest]. From September 4, 1996, until March 22, 2006, the Plaintiff had no verdict. The fact that the verdict was reversed during the appellate process rather than at the trial level does not change the fact that a Court of competent jurisdiction (the Superior Court) reversed the jury's verdict. Accordingly, viewed on the merits,

Plaintiff is not entitled to interest during those periods in the litigation where they were not the verdict winner of record.

Trial Court Opinion, 10/4/06, at 4–5.

■ ¶ 25 We find that post-judgment interest should be calculated as of the date the verdict was entered. Section 8101 states, in pertinent part, the following: "Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict...." 42 PA. CONS.STAT. ANN. § 8101, **Interest on judgments.** When the words of a statute are plain and unambiguous the rules of statutory construction do not permit courts to ignore the plain meaning of the words "in a supposed pursuit of either its spirit or an unstated legislative intent." *Nationwide Mut. Ins. Co. v. Wickett,* 563 Pa. 595, 604, 763 A.2d 813, 818 (2000) (citing 1 PA. CONS.STAT. ANN. § 1921(b)).

■ ¶ 26 "Verdict" is defined as "1. A jury's finding or decision on the factual issues of a case.... 2. Loosely, in a nonjury trial, a judge's resolution of the issues of a case." BLACK'S LAW DICTIONARY, 1592 (8th ed.2004). "Generally, a verdict is the decision of a jury reported to the court on matters submitted to the jury at trial." *Fritz v. Wright,* 589 Pa. 219, 233, 907 A.2d 1083, 1091 (2006). Thus, the ordinary definition of "verdict" contemplated is the decision rendered by the fact finder. The "date" referred to in § 8101 can only be the day the fact finder enters its verdict. The application of any other date would require judicial alteration of words that are patently clear.

¶ 27 In the present case, the verdict that we affirmed in *Hutchison V* is dated April 21, 1994; that is the only verdict to which the statute could be applied. As mentioned, interest accrues "at the lawful rate from the date of the verdict...." Any-

thing that arose during the interim, *e.g.,* entry of an erroneous JNOV, is simply irrelevant. In other words, focusing solely on the plain wording of the statute, there can only be one date which triggers the computation of interest, and that date is the date of the verdict. There is nothing in the statute which states or implies that any period of time following the verdict should be excluded for computation purposes.

■ ¶ 28 Also, interpreting the statute in any other fashion leads to an unacceptable consequence. "[I]t is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we ... are permitted to examine the practical consequences of a particular interpretation." *In re Adoption of J.A.S.,* 939 A.2d 403, 406 (Pa.Super.2007) (citation omitted). *See also* 1 PA. CONS.STAT. ANN. § 1922(1).

¶ 29 "The purpose of post[-]judgment interest is to compensate a successful plaintiff for being deprived of compensation for his or her loss during the time between ascertainment of the damage and payment by the defendant." 47 C.J.S. INTEREST & USURY § 110. Giving the judgment debtor the benefit of an *erroneous* court ruling, during which time the judgment debtor is relieved from paying post-judgment interest, hampers the very purpose behind such a policy. Such a construction needlessly and, we find, unjustly benefits the recipient of an erroneous ruling, while depriving an innocent plaintiff of his or her rightful award. *See, e.g., Hewitt v. General Tire & Rubber Co.,* 5 Utah 2d 379, 302 P.2d 712, 714 (1956) (holding that plaintiff was entitled to post-judgment interest from date of original verdict and not just from the date on which the Supreme Court reversed the trial court's entry of a directed verdict, noting "we [cannot] see any good reason why plaintiff should lose

his [post-judgment] interest because defendant was able to convince the trial court to make an erroneous ruling[ ]"); *Espinoza v. Rossini*, 257 Cal.App.2d 567, 573, 65 Cal.Rptr. 110 (1967) (finding that JNOV entered by trial court, but overruled on appeal results in entitlement to post-judgment interest from date of original verdict: "[t]here is no reason to deprive the winning party of the interest to which he has been entitled from the date of the original entry of the verdict[ ]").

¶ 30 The jury entered its verdict in this case on April 21, 1994, and that verdict was ultimately affirmed, albeit over ten years later, on March 22, 2006. Michael is entitled to post-judgment interest from April 21, 1994, until payment is rendered by the Diocesan Parties. *See Perel v. Liberty Mut. Ins. Co.*, 839 A.2d 426, 429 (Pa.Super.2003) ("We have held generally that post judgment interest stops running upon 'payment.' ").

¶ 31 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.