Darla J. TOTH

v.

DONEGAL COMPANIES, also known as Donegal Mutual Insurance Company, also known as Donegal: Mutual, also known as Donegal Insurance Company, also known as Donegal Mutual Ins. Co., also known as Donegal Insurance, also known as Donegal, a Corporation, Partnership, Proprietorship, Association, or other Entity, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 16, 2008.

Filed Jan. 14, 2009.

---

Scott A. Millhouse, Pittsburgh, for appellant.

Darrell J. Arbore, N. Huntingdon, for appellee.

BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and SHOGAN, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Donegal Mutual Insurance Company ("Donegal") appeals the order of August 22, 2007, granting Darla J. Toth's ("Toth") motion for summary judgment. Toth was in a motor vehicle accident and subsequently filed a claim for underinsured motorist ("UIM") benefits under her policy with Donegal, which denied the claim on the basis that Toth had rejected UIM coverage. The trial court determined that the form rejecting UIM coverage was void because it was not signed by Toth, the first named insured, as required by the

MVFRL;[1] rather, the form was signed by Toth's husband, John D. Toth, in both their names and allegedly with Toth's permission. After careful review, we reverse.

¶ 2 The underlying facts of this matter are straightforward. Darla and John Toth were the named insureds on a personal automobile liability insurance policy written by Donegal. Prior to April 1997, their policy provided UIM protection. In April 1997, apparently because their teenaged son became a driver, John Toth discussed with their insurance agent ways to reduce the premium. Based on those discussions, Toth signed both their names to various coverage selection forms, including the UIM coverage rejection form.

¶ 3 Revised policy declarations showing that no UIM coverage was provided were sent to the Toths' home, together with renewal notices every six months. The Toths paid reduced premiums in exchange for rejecting UIM protection. On January 10, 2001, Darla Toth suffered injuries in an automobile accident. After recovering the amount of the at-fault driver's liability insurance coverage, Toth brought an action to recover UIM benefits from Donegal, arguing that the UIM coverage rejection form was invalid because her husband had signed her name.

¶ 4 The trial court agreed, finding that because Darla Toth, as the first named insured, did not sign the form herself, it was void. Subsections 1731(c) and (c.1) of the MVFRL provide that the form rejecting UIM protection must be signed by the first named insured, and that any rejection

form that does not specifically comply with Section 1731 is void. It was not disputed that Darla Toth did not sign the form. Therefore, the trial court held the form was void and Toth was entitled to UIM coverage in an amount equal to the policy's bodily injury liability limits. For purposes of summary judgment only, the trial court assumed that Darla Toth gave her husband permission to sign her name on the rejection form. However, the trial court decided that whether John Toth had authority to sign Darla Toth's name is irrelevant, since the statute clearly requires that the form be signed by the first named insured.[2]

¶ 5 The trial court's decision and order granting summary judgment on Toth's behalf was filed August 22, 2007[3] and on September 19, 2007, Donegal filed a timely notice of appeal. Donegal was not ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); on September 27, 2007, the trial court filed a Rule 1925(a) opinion, relying on its decision and order of August 22, 2007.

¶ 6 Donegal presents the issue for our review on appeal as follows:

Whether the Trial Court erred by granting summary judgment to Darla Toth where the undisputed facts are:

1) Donegal received from the Toths the underinsured motorist coverage rejection form bearing Darla Toth's signature,

accepted, for purposes of deciding the summary judgment motion, that John Toth signed his wife's name with her permission and that she was aware of the changes to the policy.

---

1. Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701–1799.

2. John Toth testified that they discussed the changes and that he was authorized by Darla Toth to sign the form rejecting UIM coverage on her behalf. Darla Toth testified that he was not. Ordinarily, a disputed material fact precludes the granting of summary judgment. However, as stated above, here the trial court

3. The order was dated August 23, 2007; however, it was docketed on August 22, 2007. Therefore, it is deemed filed on that date.

2) Mrs. Toth's husband has testified that she authorized him to sign the form on her behalf,

3) the Toths received renewal notices for more than three years showing no underinsured motorist coverage and for that same period of time the Toths accepted the reduction of premiums resulting from the rejection of underinsured motorist coverage.

Donegal's brief at 6.

Summary judgment properly is granted after the close of the relevant pleadings 'whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report' and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). The standard of our review of an order granting or denying a motion for summary judgment pursuant to Rule 1035.2 is well established. In reviewing an order granting summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party. We will reverse only if there has been an error of law or a clear abuse of discretion.

*Morningstar v. Hallett*, 2004 PA Super 337, 6, 858 A.2d 125 (filed August 27, 2004) (case citations omitted). Our scope of review is plenary with regard to questions of law. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997)[, *appeal denied*, 555 Pa. 725, 725 A.2d 178 (1998) ]. However, we are not bound by the trial court's conclusions of law and, instead, we may reach our own inferences and conclusions. *Id.*

*Grossman v. Barke*, 868 A.2d 561, 566 (Pa.Super.2005), appeal denied, 585 Pa. 697, 889 A.2d 89 (2005).

¶ 7 Section 1731 of the MVFRL provides, in relevant part:

(c) **Underinsured motorist coverage.**— Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____
Signature of First Named Insured
_____
Date

(c.1) **Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer

fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731(c), (c.1).

¶ 8 The trial court held that the fact Darla Toth's name on the rejection form was written by another is dispositive.

> In the present case there is no question that the first named insured did not sign the rejection form. Rather, her husband signed for her. Whether he had authority to do so is irrelevant under the statute that very clearly states that the forms 'must be signed by the first named insured.' The statute makes no provision for the signing by another with authority.

Trial court opinion, 8/22/07 at 5.

¶ 9 As Toth states, the courts of this Commonwealth have strictly construed the MVFRL's technical requirements. *American International Insurance Company v. Vaxmonsky,* 916 A.2d 1106 (Pa.Super.2006) (UIM coverage rejection form void where insurer omitted the word "all" from the phrase "all losses and damages"; insurer failed to include all of the required statutory language and Section 1731(c) expressly mandates specific compliance with the statute); *Lucas v. Progressive Casualty Insurance Company,* 451 Pa.Super. 492, 680 A.2d 873 (1996), *appeal denied,* 548 Pa. 619, 693 A.2d 589 (1997) (although it was clear from the record that the insureds knowingly waived UIM coverage, the UIM rejection form was void where it was printed on the same sheet of paper as rejection of uninsured motorist ("UM") protection and Section 1731(c.1) requires the rejections to be printed on separate sheets of paper). *Cf. Winslow–Quattlebaum v. Maryland Insurance Group,* 561 Pa. 629, 752 A.2d 878 (2000) (waiver of UIM coverage valid where UIM rejection form appeared on the same page as statement rejecting stacking of UIM benefits; the UIM form was separate from the UM form and there is no prohibition to having rejection of UIM benefits and UIM stacking benefits on the same official form).

¶ 10 We are also mindful that, "When the words of a statute are plain and unambiguous the rules of statutory construction do not permit courts to ignore the plain meaning of the words 'in a supposed pursuit of either its spirit or an unstated legislative intent.'" *Hutchison ex rel. Hutchison v. Luddy,* 946 A.2d 744, 752 (Pa.Super.2008), quoting *Nationwide Mutual Insurance Company v. Wickett,* 563 Pa. 595, 604, 763 A.2d 813, 818 (2000), citing 1 Pa.C.S.A. § 1921(b). Nonetheless, we hold that where a signature appears on the UIM rejection form purporting to be that of the first named insured, the insurer has complied with the statute resulting in a facially valid rejection form. The burden would then shift to the insured to prove that his or her signature was affixed to the rejection form without knowledge or authorization.

¶ 11 The parties agree that there is no case law addressing this specific issue. However, we find the case of *Jackson v. Allstate Insurance Co.,* 441 F.Supp.2d 728 (E.D.Pa.2006), to be instructive. Elise

Jackson was involved in an automobile accident and submitted a claim for UIM benefits to her insurer, Allstate, after the responsible party's insurance was insufficient to fully compensate her for her damages. Allstate denied the claim because Jackson had signed a waiver of UIM coverage, and produced a rejection form with Jackson's purported signature. *Id.* at 730. Allstate's handwriting expert opined that the questioned Jackson signature was "pictorially similar" to the known signature of Jackson. *Id.* Jackson alleged the signature was a forgery and that she could not remember signing the UIM rejection form. *Id.*

¶ 12 Initially, the court addressed the issue of who bore the burden of proving the forgery, Jackson or the insurer. Jackson argued that under the MVFRL, in the context of waiver of UIM benefits, if the insured asserts a possible forgery, the burden of proof shifts to the insurer to disprove forgery. *Id.* at 732. The *Jackson* court rejected this argument, stating:

> To hold that an insurer must be able to prove the validity of a signature in every situation involving § 1731(c), however, would impose an additional technical requirement on the insurer, namely, that of potentially being required to prove that every signature it maintains in its records is not a forgery. [Footnote 8] The statute simply does not require this.

*Id.* at 733.

> [Footnote 8] With respect to the insurer's responsibility of validating signatures, the statute goes no further than to say that '[t]he signatures on the forms *may* be witnessed by an insurance agent or broker.'

*Id.* n. 8, quoting 75 Pa.C.S.A. § 1731(c.1) (emphasis in Jackson).

> There is no indication whatsoever that the MVFRL changes the common-law rule that the party asserting the forgery bears the burden of proving the facts upon which the forgery is based. To withstand summary judgment, Jackson therefore bears the burden of showing that the challenged signature is a forgery.

*Id.* at 734.

¶ 13 Similarly, here, Toth asserts that the UIM rejection form was signed without her knowledge or authorization. Donegal has produced a UIM rejection form, dated April 7, 1997 and bearing the purported signatures of Darla Toth, the first named insured, and John Toth. (Donegal's response to petition to compel arbitration, 6/10/03, Exhibit 4; Docket No. 6.) Therefore, the rejection form complies with the statutory requirements, and Toth bears the burden of proving the form is invalid.

¶ 14 "The primary purpose of the MVFRL, and especially the 1990 amendments . . ., was to control the cost of insurance such that a higher percentage of drivers would be able to afford insurance." *Everhart v. PMA Insurance Group*, 595 Pa. 172, 181, 938 A.2d 301, 306 (2007), citing *Craley v. State Farm Fire and Casualty Co.*, 586 Pa. 484, 503, 895 A.2d 530, 541 n. 17 (2006). *See also Progressive Halcyon Insurance Co. v. Kennedy*, 908 A.2d 911, 916 (Pa.Super.2006) ("The purpose of the MVFRL was to address rising insurance costs by encouraging motorists to purchase insurance and to deny unlimited protection to those who did not choose full tort coverage.") (citation omitted). Between 1997 and 2001, the Toths paid reduced premiums in exchange for waiving UIM protection. They also received policy renewal forms every six months explicitly stating that they had rejected UIM coverage. According to John Toth's testimony, they discussed reducing coverage, including waiving UIM protection, to lower the

cost of insurance. Toth never protested or contacted Donegal to complain that the UIM rejection form was filled out by her husband without her knowledge or consent.

¶ 15 We also note that Toth's interpretation of the statute would lead to unacceptable consequences. "[I]t is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we ... are permitted to examine the practical consequences of a particular interpretation." *Hutchison ex rel. Hutchison, supra* at 752 (citations omitted). Toth argues, and the trial court agreed, that if the signature on the UIM rejection form is not written in her own hand, then the form is void as a matter of law and the inquiry ends. This is true regardless of whether she authorized her husband to sign her name or whether she knowingly and intelligently waived, or intended to waive, UIM protection.

¶ 16 We find this places entirely too great a burden on the insurer. As in *Lucas* and *Vaxmonsky*, discussed *supra*, whether the rejection form contains the prescribed language or whether the UIM rejection and UM rejection forms appear on separate pages, as expressly required by the statute, is within the exclusive control of the insurer. However, there is no practical way, once the form is in the insured's hands, to verify that the insured's purported signature rejecting UIM coverage is, in fact, his or her signature. While the statute provides that the insured's signature *may* be witnessed by an agent or broker, it does not require it.[4]

¶ 17 Toth's own argument on appeal illustrates the impracticalities of placing the burden on a defendant insurer to prove the authenticity of the first named insured's signature:

> First, the signature line marked 'Signature of First Named Insured' contains the names of both 'Darla Toth' and 'John Toth,' appearing side by side, which should have alerted the insurer that it was quite possible that John Toth was signing for Darla Toth. Without question, the form requires only the name of the first named insured, therefore, the inclusion of John Toth's name on the signature line of the form signified an irregularity. Second, both names contained on the signature line of the waiver form appear to the untrained eye to have been written in the same hand, by the same person. Therefore, it was evident that either John Toth had signed Darla Toth's name or Darla Toth had signed John Toth's name, despite the fact that he was not the first named insured and his name was not even required to be on the form. At the very least, this raised a question about whether the named insured had signed the form.

Toth's brief at 13–14.

¶ 18 The insurer is not required to launch an investigation every time it receives a UIM rejection form bearing the apparent signature of the first named insured, purporting to waive coverage. The MVFRL does not require that the rejection forms be notarized. Basically, an insurer would be forced to have an agent or broker personally witness the signature of every insured who wanted to waive UM/UIM protection to verify that it was indeed the first named insured, in the flesh, signing the rejection form in his/her own hand. This is unreasonable and is not required by Section 1731(c).

---

4. The coverage forms were completed by mail. The insurance agent testified that she would not have accepted the rejection form if Darla Toth's signature had not appeared as the first named insured.

¶ 19 A contrary result would amount to a game of "gotcha" between insureds and their insurers, since whether or not a first named insured authorized another to sign his name on the rejection form, as John Toth alleges, is deemed "irrelevant." Thusly, a first named insured could instruct someone else to sign his name on the rejection form, paying reduced insurance premiums as a result, secure in the knowledge that if he is in an accident with an underinsured at-fault party, the UIM rejection form is void as a matter of law and he will be automatically entitled to UIM benefits in the amount of his bodily injury liability policy limits. Such a result is untenable and an invitation to fraud. Toth bears the burden, as was stated in *Jackson, supra,* of proving that her signature on the UIM rejection form was a forgery, placed there without her knowledge or consent, and that she did not willingly waive UIM coverage; otherwise, the rejection form remains valid.

¶ 20 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.